**UNITED STATES of America,**
**Plaintiff,**

v.

**500 POUNDS, MORE OR LESS, OF**
**VEAL AND BEEF, Defendant.**

**No. C–70 1141.**

United States District Court,
N. D. California.

Nov. 20, 1970.

As Amended Dec. 7, 1970.

———◆———

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Brian B. Denton, Asst. U. S. Atty., for plaintiff.

George Alexander McKray, San Francisco, Cal., for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF CLAIMANT

WOLLENBERG, District Judge.

This action prays that certain meat products located at the establishment of the Chip Steak Company in Oakland, California, be seized and condemned in accordance with the provisions of the Federal Meat Inspection Act (21 U.S.C. § 673). It is alleged that the products herein are adulterated within the meaning of 21 U.S.C. § 601(m) (8), and misbranded within the meaning of 21 U.S.C. § 601(n) (1). Cross motions for summary judgment have been taken under submission.

The affidavits on file indicate that federal inspectors on February 3, 1970, took a random sample of a product from the above named establishment. The product was in containers labeled: "Veal Steaks; Beef Added; Chopped-Molded-Cubed-Frozen". The sample was analyzed on February 9, 1970, and found to contain 31.4% fat content. On February 13, all that remained of the lot from which the sample was taken was marked "U.S. Retained", and supervisory personnel of the Chip Steak Company were informed that the product would be released if it was reworked in such a manner as to reduce the fat content below 30%, or if it was relabeled as "veal patties". The Chip Steak Company declined to pursue either alternative, and, on March 27, 1970, demanded that an "immediate charge" be made in federal court in accordance with the condemnation procedures set up by the Meat Inspection Act. It was pointed out that the product herein had been "retained" beyond twenty days without a charge being brought and that this violated the provisions of 21 U.S.C. § 672.

The government brought no charges under §§ 672, 673; nor was there an administrative determination that the label used by the Company was misleading and should not be used. 21 U.S.C. § 607(e). Finally there was no attempt to proceed to summary condemnation and

destruction of the product under §§ 603–606. See note 3, *infra*, and accompanying text.

Yet the product continued to be "retained". On May 15, 1970, the Company brought an action in federal court asking that the Secretary of Agriculture be enjoined from "harassing" it. The government's response to this was to file the instant *"Complaint In Rem"* which gives rise to the present action.

The Chip Steak Company, taking up the government's hesitantly cast gauntlet, has raised a multitude of issues, which, if decided in their entirety, would require the Court to render an exhaustive interpretation of a very complex piece of legislation. It argues that the labeling requirements of the Department of Agriculture, as applied to veal products, have not been properly promulgated. Furthermore, it is said that the government failed to pay for the samples taken, and that such is required, as a condition precedent to seizure, under 21 U.S.C. § 642(a). Numerous factual contentions are made, including allegations that the "Veal Steaks" do not contain over 30% fat, and that the samples were improperly taken, prepared, and shipped. Related to the factual contest here is the question of whether the methods used by government inspectors are subject to challenge in this context, and whether independent analyses are admissible to rebut whatever presumption might attach to the government's own test results.

■ But it is the Company's argument relevant to the procedure used by the government to condemn the "Veal Steaks" herein that the Court finds dispositive of the instant case.

Under the former version of the Meat Inspection Act, i. e. the Act of 1907, the federal government was limited to inspecting and passing upon certain meat products which were to be used in interstate commerce. Condemnation powers appear to have been summary, but were limited to meat or animals found to be "unsound, unhealthful, unwholesome, or otherwise unfit for food". 21 U.S.C. § 72; 9 C.F.R. §§ 310–15. The law also covered meat and meat food products sold in interstate or foreign commerce under false and deceptive names. 21 U.S.C. § 75. The decision of the Secretary as to the deceptive nature of a tradename was considered conclusive unless arbitrarily exercised. Brougham v. Blanton Mfg. Co., 249 U.S. 495, 39 S.Ct. 363, 63 L.Ed. 725 (1919).

The Act of 1967 incorporates the earlier legislation *almost* verbatim, adds provisions regarding federal encouragement of State inspection programs, and establishes "auxiliary" means of enforcement of the federal Act. See generally 2 U.S.Code Cong. and Adm.News, p. 2189 et seq. (1967). The new Act does away with the "interstate or foreign commerce" requirement of the old,[1] and likewise substitutes the term "adulterated" for former language restricting federal intervention to products found "unfit" or "unhealthful". An adulterated product not only includes one not fit to be eaten, but also one to which almost anything has been added or extracted in an effort to make the product seem better than it actually is. 21 U.S.C. § 601(m) (8).

The new and old portions of today's Meat Inspection Act are nŏt necessarily happily married, and nowhere is this more apparent than when examining the enforcement provisions which are scattered about its various sections. The summary condemnation and destruction procedures of 21 U.S.C. §§ 71–72 ("shall be destroyed * * * by the said establishment in the presence of an inspector") now appear in 21 U.S.C. § 604, but while §§ 71–72 spoke only of diseased and unfit products, § 604 uses the all-inclusive term, "adulteration". Thus it would *initially* appear, and the government argues, that summary condemnation is an alternative open to the government in *any* case of adulteration.

---

1. But see the definition of "commerce" utilized in the new Act. 21 U.S.C. § 601(h).

The argument against such an across the board allowance of summary, out-of-court condemnation procedures is drawn, not from the "old" sections of the Act, but from the new "auxiliary provisions thereof. 21 U.S.C. §§ 672, 673 provide for seizure and condemnation of adulterated and/or misbranded products *by means of an action in federal court*. Only after entry of the Court decree may the article be destroyed or sold by the government. Furthermore, either party may demand jury trial "of any issue of fact joined in any case". Finally, and most relevant to this case, the government, if it suspects adulteration or misbranding, may "detain" the suspect product for up to twenty days pending the filing of a libel by the Department, or reference of the matter to another jurisdiction for action. Under the old Meat Inspection Act, the Department enjoyed the "implied" power to "retain" suspect products *indefinitely* pending a decision on action to be taken. Affidavit of L. L. Gast, Director of Compliance and Evaluation Staff, Consumer Protection Programs, Consumer and Marketing Service, United States Department of Agriculture.

Defendants argue that the procedures for seizure and condemnation set up by §§ 672, 673 must be seen as qualifying and controlling any powers enjoyed by the Department under the old Act. By implication, this would mean that no seizure or condemnation could take place in an out-of-court proceeding, that the power to "detain" (or "retain": there is no functional difference) is limited to twenty days in *all* cases, and that the right of jury trial is similarly wide-ranging.

■ Such an interpretation of the new Act ignores legislative history as well as the language of the statute. 21

U.S.C. § 602 clearly shows a Congressional intent to broaden the powers of the federal government in dealing with meat products that are unwholesome, adulterated, or misbranded. See also "Committee Deliberations", in 2 U.S. Code Cong. and Admin. News, pp. 2189–2191 (1967). And since the days of Upton Sinclair, the interest of the government in *summarily* disposing of rotten, diseased, or unwholesome animals, or carcasses, or parts thereof, has been seen as paramount. There is no evidence in the legislative history that Congress now feels that such items should not be held back from the stream of commerce for as long as federal inspectors deem necessary, or that they should not be destroyed save upon a judgment brought after a court or jury trial.

The fact that Congress chose to retain, and broaden, the wording of former §§ 71–72 (now §§ 603, 604) militates most strongly against defendant's argument that §§ 672, 673 must now be seen as providing the sole means of retention, seizure and condemnation of adulterated meat products. Those sections of Subchapter IV are clearly labeled "auxiliary". The earlier, older sections of the Act remain its heart and soul.

Paradoxically, though the Company has lost its war against the right of the government to proceed summarily in most adulteration situations, it appears to have won its battle against the course of action chosen in the instant case. The Court cannot ignore §§ 672, 673 entirely. To say that summary proceedings are permissible under §§ 603, 604 in *all* cases of adulteration would ignore the fact that Congress clearly felt that the government needed additional, court-condemnation powers in *some* adulteration situations.[2]

2. With no cases in point, the Court must refer directly to the wording of the statutes, perusal of which shows clearly the greater breadth of § 672 proceedings as compared to the summary proceedings of §§ 603–606. The sections when compared show a congressional desire to distinguish between cases of "adulteration" of freshly slaughtered meat, which are more likely to involve an immediate danger to the public health, and "adulteration" which arises when the carcass or its parts have been canned, boned, cut up, or otherwise made into a finished meat food product.

What are these cases? One arises when the product inspected does not violate the standards of the Department of Agriculture, but does contravene the valid rules of another federal agency, or of a State or Territory. In such cases, the Department is authorized by § 672 to detain the product for a limited time to give the other jurisdiction(s) the chance to proceed against it.

Another case in point is that of the slaughtered carcass which has been cut up, and reduced to the products which are finally to be sold to the consumer. Once these products have left the "slaughtering, meat-canning, salting, packing, rendering, or similar establishment", they would seem to be outside of the reach of §§ 603–606, and federal action would have to depend on other provisions of the law.

Still another situation is the one here. §§ 603–606 apply to inspections of certain animals before slaughter, or of their carcasses and parts thereof afterwards. The inspection is, in short, of items *"to be prepared* at any slaughtering, meat-canning, salting, packing, rendering, or similar establishment * * * as articles of commerce which are capable of use as human food". The sections, and the summary proceedings provided therein, deal, in short, with carcasses *before* they are "allowed to enter into any department wherein the same are to be treated and prepared for meat food products". 21 U.S.C. § 605. Summary procedures are not implied for products which have been moved from the slaughtering or packing houses into other establishments further on in the stream of commerce. Nor does it ap-

"[T]he Secretary shall cause to be made by inspectors * * * a post mortem examination and inspection *of the carcasses and parts thereof* of all cattle, sheep, swine, goats, horses, mules, and other equines *to be prepared* at any slaughtering, meat-canning, salting, packing, rendering, or similar establishment * * * as articles of commerce * * * and *said inspectors shall label* * * * as 'Inspected and condemned' *all carcasses and parts thereof* of animals found to be adulterated; and all [items] thus inspected and condemned shall be destroyed for food purposes by the said establishment in the presence of an inspector * * *." 21 U.S.C. § 604 (emphasis added).

"[S]uch examination and inspection shall be had *before* the said *carcasses or parts thereof* shall be allowed to enter into any department wherein the same are *to be treated and prepared* for meat food products * * *." 21 U.S.C. § 605 (emphasis added).

"Whenever any carcass, part of a carcass, *meat or meat food product,* * * * *or any product exempted from the definition of a meat food product,* or any dead, dying, disabled [animal] is found by any authorized representative of the Secretary *upon any premises* * * * and there is reason to believe that any such article is adulterated or misbranded * * * or that it has not been inspected * * * it may be detained by such representa-

tive for a period not to exceed twenty days, pending action under section 673 of this title or notification of any Federal, State, or other governmental authorities having jurisdiction * * *." 21 U.S.C. § 672 (emphasis added).

*"Any carcass, part of a carcass, meat or meat food product* * * * that is being transported in commerce or otherwise subject to subchapter I or II of this chapter, *or is held for sale in the United States after such transportation,* and that (1) is or has been prepared, sold, transported, or otherwise distributed or offered or received for distribution in violation of this chapter, or (2) is capable of use as human food *and is adulterated or misbranded,* or (3) *in any* other *way is in violation of this chapter,* shall be liable to be proceeded against and seized and condemned * * * on a libel * * * in any United States district court * * * within the jurisdiction of which the article or animal is found. * * * The proceedings in such libel cases shall conform, as nearly as may be, to the proceedings in admiralty, except that *either party may demand trial by jury* of any issue of fact joined in any case * * *." 21 U.S.C. § 673(a) (emphasis added). The Court notes that there is no statement of what facts are for the jury and what is left to agency discretion. The Court wonders if it is for a jury to decide the question, "What is 'hamburger'".

pear that the government may proceed summarily against certain meat or meat food products which have been so refined, or prepared in combination with other ingredients, that they can no longer be fairly included under the definition of "carcasses or parts thereof".[3]

It is in these cases, where the government cannot act under §§ 603–606, that recourse must be had to the procedures established by other, newer sections of the Act. One such alternative procedure, not utilized here, is that contained in § 607(e) for misbranded products. Another is the judicial condemnation route mapped out in §§ 672, 673.

The *res* herein is called a "meat food product" (amended complaint September 14, 1970). It consists of a mixture of veal and beef to which has been added "hydrolized plant protein and flavoring". It is "comminuted", i. e. ground, or chopped, or pulverized. Affidavit of William J. Minor, Chief of the Labels Standards and Packaging Branch, Technical Services Division, Consumer and Marketing Service, Department of Agriculture.

Thus while the Chip Steak Company establishment involved here is a federally inspected meat packing plant, the product involved is more properly a "meat food product" rather than a "carcass or parts thereof". This being so, summary retention and destruction was not evidently seen as an alternative open

to the government, and, in fact, the government, though using the word "retention", never attempted to proceed summarily under §§ 603–606. Nor did the government ever formally declare the label utilized by the Chip Steak Company false or misleading and subject to the provisions of § 607(e).

This leaves the government with §§ 672, 673, i. e. judicial seizure and condemnation. When these auxiliary procedures are invoked, it seems clear that the twenty day detention limit of § 672 must be observed. This was not done by the Department in the instant case, which simply marked the product "retained", and did nothing further, neither withholding the label nor filing an action in this Court until prodded to do so by the Company. The original complaint was filed on June 1; i. e., far beyond twenty days after the original "retention".

Accordingly, the Court finds that the government, having elected to proceed under §§ 672, 673 of the Federal Meat Inspection Act, did not comply with the twenty day detention limit provided therein. This being the case, defendant's motion to dismiss, being supported by affidavits, will be considered as a motion for summary judgment under Rule 12(c). Said motion will be, and hereby is, GRANTED. The article herein libeled will be released into the possession of the claimant Chip Steak Company.

3. Note however the provisions of § 605 allowing inspection of "meat food products", "which, after having been issued from any slaughtering, meat canning, salting, packing, rendering or similar establishment, shall be returned to the same or to any similar establishment where such inspection is maintained". Note also § 606 which similarly speaks of summary inspection, condemnation, and destruction of "*all* meat food products prepared for commerce in any slaughtering [etc.] establishment". The government has not argued that the "veal steaks" herein, which were "retained" at a federally inspected meat packing plant, fall under these apparent exceptions to the general restriction of summary procedures to "carcasses and parts thereof".

Since the government has elected to proceed under § 671 et seq., this Court will venture no opinion as to the possibility that it might have chosen to act summarily under § 605 or § 606. It could be argued that §§ 605–06 in effect render meaningless other language which appears to restrict summary procedures to items "to be prepared" into meat food products, and that the total import of §§ 603–06 is to allow inspection and appropriate action as to any animal not yet slaughtered, any carcass after slaughter, or any meat food product made therefrom so long as it has not been finally taken away from the packing, rendering, or similar establishment wherein it was prepared.