**UNITED STATES of America,
Plaintiff,**

v.

**2623 POUNDS, MORE OR LESS, OF
VEAL AND BEEF, Defendant.**

**No. 70 1703.**

United States District Court,
N. D. California.

April 28, 1971.

See supplemental order D.C., 332 F. Supp. 1091.

James L. Browning Jr., U. S. Atty. and Brian B. Denton, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

George A. McKray, San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This action is brought pursuant to the provisions of Section 403 of the Federal Meat Inspection Act, 21 U.S.C. 673, and prays the seizure and condemnation of certain meat products located at the establishment of the Chip Steak Company (claimant herein) on the ground that such products are misbranded within the meaning of 21 U.S.C. 601(n) (1) and (n) (7) and on the further ground that such products are adulterated within the meaning of 21 U.S.C. 601(m) (8).

The action is presently before the court on cross-motions for summary judgment.

The record herein indicates that on March 17, 1960, an inspector for the United States Department of Agriculture took a sample of a meat product from claimant's establishment; that the sample was taken from containers marked "Tasty Beef Steaks; Beef-Chopped-Molded-Cubed-Frozen; Hydrolized Vegetable Protein and Flavoring Added"; that such sample was analyzed and found to contain in excess of 30 fat; and that, on March 27, 1970, the lot from which the sample had been taken was marked "U.S.–Retained".

The same procedure was followed on June 22, 1970, when federal inspectors took a sample from containers marked "Breaded Veal Steaks; Beef Added; Chopped-Molded-Cubed-Frozen; Hydrolized Vegetable Protein and Flavoring Added"; such sample was analyzed and found to contain in excess of 30% fat; and on July 1, 1970, the lot from which this sample had been taken was also marked "U.S.–Retained".

The same procedure was again followed on June 24, 1970, with a sample from containers marked "Buttered Beef Steaks; Chopped-Shaped-Cubed-Frozen; Monosodium Glutamate added"; this sample was also found to contain in excess of 30% fat and, on July 6, 1970, the lot from which the sample had been taken was marked "U.S.–Retained".

The federal agents informed supervisory personnel of Chip Steak Company that the products would be released if they were reworked so as to reduce the fat content below the 30% level, or if they were relabeled as "veal patties;" the Company refused to pursue either alternative.

On August 11, 1970, the instant complaint by the government was filed charging that the meat food products are misbranded within the meaning of 21 U.S.C. 601(n) (1) [1] in that the labels are false and misleading because the description on the labels is the common and usual name of a food containing not more than 30% fat whereas the products sampled actually contained in excess of 30% fat; and that the product is misbranded within the meaning of 21 U.S.C. 601(n) (7) [2] in that the labels purport to describe a hamburger product for which a definition and standard of identity or composition has been prescribed by the Secretary of Agriculture but that the product does not conform to said standard in that the beef contains in excess of 30% fat.[3]

The complaint further charges that such meat food products are adulterated within the meaning of 21 U.S.C. 601(m)

---

1. Title 21 U.S.C. 601(n) (1) provides that a meat food product is "misbranded" if its labeling is false or misleading in any particular.

2. Title 21 U.S.C. 601(n) (7) provides that a meat food product is "misbranded" if it purports to be a food for which a definition and standard of identity or composition has been prescribed by the Secretary

of Agriculture unless it conforms to such definition and standard.

3. The definition and standard referred to in the complaint states: "Hamburger shall consist of chopped fresh beef, with or without the addition of beef fat as such and/or of seasoning and shall not contain more than 30 percent of fat." 9 C.F.R. 317.8(35).

(8) [4] in that fat has been substituted in part for beef or has been added so as to increase the bulk or weight or reduce the quality or strength of the meat food product.

Section 403 of the Federal Meat Inspection Act, 21 U.S.C. 673, the provision under which the instant action was filed, provides, in part, that any meat food product which is capable of use as human food and is adulterated or misbranded shall be liable to be proceeded against and seized and condemned, at any time, on a libel of information in any United States District Court within the jurisdiction of which the article is found; and that the proceedings should conform, as nearly as may be, to the proceedings in admiralty, except that any party may demand trial by jury of any issue of fact joined in any case.

Following the filing of the complaint herein the products were seized by the United States Marshal and are presently in his custody.

## CLAIMANT'S CONTENTIONS

Claimant, by a cross-complaint for declaratory and injunctive relief and a motion for summary judgment, raises the following contentions as jurisdictional hurdles to be overcome prior to a consideration of the merits of the instant libel action: (1) that the 1967 Wholesome Meat Act, 21 U.S.C. 601 et seq., created a period of limitation requiring the filing of a libel action within twenty days of detention of any meat product; (2) that this action, in essence, presents a mislabeling question and should proceed under the provisions of 21 U.S.C. 607(e) which provides for judicial review by the Court of Appeals rather than by the district court; (3) that the meat food samples upon which the instant action is based were illegally seized in that no payment was made therefore.

Claimant raises the further contention that the fabricated steak products which are the subject of the instant action are readily distinguishable from hamburger and that, in the absence of a regulation covering fabricated steaks, there can be no adulteration or misbranding.

Recognizing that, subsequent to the filing of the instant action, the Secretary of Agriculture promulgated regulations dealing specifically with fabricated steak, claimant contends that such regulations are "ex post facto" regulations and, further, that such regulations were not properly promulgated.

Before discussing the various legal and factual issues raised in the pleadings and affidavits on file herein in support of the summary judgment motions, a brief outline of the Meat Inspection Act is in order.

## THE LAW INVOLVED

The original Federal Meat Inspection Act, i. e., the Act of 1907, 21 U.S.C. 71 et seq., was recently amended by the Wholesome Meat Act of 1967, 21 U.S.C. 601 et seq. The 1967 Act incorporates the earlier legislation almost verbatim and adds, *inter alia*, "auxiliary" means of enforcement of the Act's provisions. 21 U.S.C. 671 et seq. See, legislative history, 2 U.S.Code Cong. & Adm.News 2188 (1967).

Under the earlier legislation, 21 U.S. C. 71 et seq., the Government was limited to inspecting and passing upon certain meat food products which were to be used in interstate commerce; condemnation powers, while summary in nature, were limited to meat or animals found to be "unsound, unhealthful, unwholesome, or otherwise unfit for food." 21 U.S.C. 72; 9 C.F.R. 310–315.

The Act of 1967 substitutes the term "adulterated" for the former language restricting federal intervention to products found unfit for food. An adulterated product not only includes one not fit to be eaten, "but also one to which almost anything has been added or extracted to make the product seem better than it actually is." United States v.

---

4. Title 21 U.S.C. 601(m) (8) provides that a meat food product is adulterated "if any substance has been added thereto . . . so as to increase its bulk or weight . . . or make it appear better or of greater value than it is. . . . "

500 pounds, etc., Veal and Beef, 319 F. Supp. 966, 967 (N.D.Cal.1970); 21 U.S.C. 601(m) (8).

The summary condemnation and destruction procedures of the original Act, 21 U.S.C. 71–72 ("shall be destroyed . . . by the said establishment in the presence of an inspector") are now contained in §§ 605–606; under these provisions summary condemnation is available whenever any carcass, part thereof, or meat food product is found by an inspector to be "adulterated." [5]

Under the earlier legislation the Federal Government enjoyed the "implied" power to "retain" products believed to be unfit for food indefinitely pending a decision on action to be taken. (See affidavit of L. L. Gast, Director of Compliance and Evaluation Staff, Consumer Protection Programs, Consumer and Marketing Service, United States Department of Agriculture). United States v. 500 Pounds, supra at 968.

The court in United States v. 500 Pounds, supra, found that Congress, in retaining and broadening the summary condemnation powers of the old Act, indicated no intention that the heretofore existing "implied" powers should be in any way reduced; however, it is clear that the "implied" powers of indefinite retention do not apply to the new "auxiliary" provisions contained in the 1967 Act. In 21 U.S.C. 672 Congress specifically created the power to "detain" and limited such power to a period not to exceed twenty days.[6]

## TWENTY DAY DETENTION PERIOD ISSUE

Claimant contends that since the meat food products seized herein were detained by the Government for in excess of twenty days prior to the filing of an action under § 673 the products must now be released and the action dismissed.

In United States v. 500 Pounds, supra, the court agreed with this contention and held that, whenever the Government elects to proceed by way of judicial condemnation under § 673, the limits of § 672 are applicable and an action must be brought within twenty days of detention.

We are unable to agree with that interpretation of the provisions of §§ 672–673, for, while it is true that § 672 limits the right of the government to physically detain beyond a maximum of twenty days, nowhere in the provisions of § 673 is the twenty day period of § 672 mentioned as a time limitation upon the filing of a libel action; indeed, a ju-

5. In United States v. 500 Pounds et al., supra at 970 n. 3, the court noted, correctly we believe, that under §§ 603–606 inspection and summary condemnation is arguably allowable as to any animal not yet slaughtered (§ 603), any carcass or part thereof after slaughter (§§ 604–605), or any meat food product made therefrom (§ 606), so long as it is adulterated and has not been finally taken away from the packing, rendering or similar establishment wherein it was prepared. Therefore, once a meat food product has finally left the premises of the packing, etc., establishment, it would appear that summary condemnation is no longer available and that the "auxiliary" powers contained in §§ 671–673 must be employed, and that those powers must always be employed in cases of misbranding.

6. Title 21 U.S.C. 672 provides: "Whenever any carcass, part of a carcass, meat or meat food product . . . is found . . . upon any premises where it is held for purposes of, or during or after distribution in, commerce . . . and there is reason to believe that any such article is adulterated or misbranded and is capable of use as human food, or that it has not been inspected, in violation of the provisions of . . . this chapter or of any other Federal law or the laws of any State or Territory . . . it may be detained . . . for a period not to exceed twenty days, pending action under section 673 . . . or notification of any Federal, State, or other governmental authorities having jurisdiction. . . ."

As the court in United States v. 500 Pounds, supra, noted, there is no functional difference between the power to "retain" and the power to "detain"; therefore, the two terms shall be treated synonymously in the context of this opinion.

dicial proceeding may be instituted "at any time" against any carcass, part thereof, or meat food product which is adulterated or misbranded. 21 U.S.C. 673.

It may be that, if the property is held in excess of the twenty day period without action on the part of the government, a repossession of such property could be effected by the claimant through a proceeding in the nature of mandamus or replevin.

■ We conclude, however, that an interpretation of the provisions of § 672 making the twenty day detention limitation simply a method of maintaining the status quo pending an administrative decision on available options is consistent with the purposes of the Act (as those purposes are set out in 21 U.S.C. 602); and that a failure to act within twenty days of detention does not necessarily foreclose all further action by the government.

We conclude, therefore, that the twenty day period of § 672 was not intended by Congress as a jurisdictional prerequisite to a libel proceeding under § 673 and that the present action is properly before the court.

### MISLABELING–REVIEW BY COURT OF APPEALS–ISSUE

Under 21 U.S.C. 674 jurisdiction is vested in the United States District Courts to hear all cases arising under the Act, except as provided in § 607(e).

Title 21 U.S.C. 607(e) provides that, if the Secretary of Agriculture has reason to believe that the use of any label is false or misleading, he may direct that such use be withheld; that if the individual proposing to use such label disagrees with this determination he may request a hearing; and that, following the hearing, the Secretary's determination shall be conclusive unless the individual adversely affected thereby appeals to the United States Court of Appeals.

Claimant argues that underlying the instant action is the Secretary's determination that the labels in question are misleading and that any action concerning the accuracy of the labels must proceed under § 607(e).

This argument fails in several respects, not the least of which is the fact that there has been no administrative determination that the labels used by the claimant are misleading and should not be used; rather the government has elected to proceed under the provisions of § 673 seeking judicial condemnation.

■ Clearly, § 673 contemplates a judicial proceeding in district court at any time against any meat food product which is adulterated or misbranded; nothing in § 673 requires an administrative determination that a label is misleading before an action might be brought charging misbranding.[7]

### NON–PAYMENT FOR SAMPLES ISSUED

Under 21 U.S.C. 642 certain classes of persons, firms, and corporations within the meat industry are required to keep accurate records and to afford representatives of the Secretary, at reasonable times upon notice, access to their places of business and opportunity to examine the facilities, inventory, and records, and "to take reasonable samples of their inventory upon payment of the fair market value thereof."

Claimant contends that the failure of the inspectors to pay for the samples seized in the instant action requires a dismissal of the complaint.

The government, admitting non-payment, contends that section 642 is inapplicable to the type of inspection carried out in the instant action; indeed, the most recent regulations promulgated by the Secretary of Agriculture provide

---

7. In light of our finding that section 607 (e) is not a bar to an action in district court for misbranding under section 673, we find it unnecessary to reach those questions raised by claimant concerning procedures to be followed in administrative proceedings instituted under section 607(e).

that samples of products shall be taken for examination without cost. 35 Fed. Reg. 15597 (Oct. 3, 1970).

■ However, assuming arguendo that payment is required, the mere fact of non-payment could have no effect on the admissibility of the samples in evidence in a libel proceeding, especially in the absence of any showing that such payment was demanded, i. e., not waived, by claimant. The Act does not contain any provision directing, even implicitly, that samples of meat food products or the results of any analysis thereof must be excluded as evidence if such samples are seized without payment, nor is such result constitutionally compelled.

Claimant does not contend that the samples were obtained in an unreasonable manner nor even that the samples were seized over claimant's objection. We recognize that ". . . in the context of the exclusionary rule a warrantless inspectorial search of business premises is reasonable when entry is gained not by force or misrepresentation, but is, with knowledge of its purpose afforded by manifestation of assent." United States v. Thriftimart, 429 F.2d 1006, 1010 (9th Cir. 1970).

Therefore, regardless of non-payment, the samples and analytical reports in question are not subject to exclusion. Dismissal of this action for that reason would not be justified.

## APPLICABLE REGULATION

The complaint herein charges the seized meat food products with being misbranded and adulterated; this charge is based on the assertion that the libeled products must conform to the definition and standard set forth in 9 C.F.R. 317.8(35) for "hamburger."

The government contends that the seized veal steaks and beef steaks purport to be a hamburger product and must, therefore, conform to the definition of hamburger. The claimant contends, however, that the veal steaks and beef steaks described in the complaint are distinguishable from hamburger and that, until separate regulations are promulgated for veal and beef steaks, there can be no adulteration or misbranding.

Subsequent to the filing of this action, however, the Secretary, on October 3, 1970, issued the following final regulation specifically covering fabricated veal and beef steaks:

"*Fabricated steak.* Fabricated beef steaks, veal steaks, beef and veal steaks, or veal and beef steaks . . . such as those labeled 'Beef Steak, Chopped, Shaped, Frozen' . . . 'Veal Steaks, Beef Added, Chopped-Molded-Cubed-Frozen, Hydrolized Plant Protein, and Flavoring' . . . Such products shall not contain more than 30 percent fat. . . ." 35 Fed.Reg. 15597.

Therefore, assuming the inapplicability of the prior "hamburger" regulations to claimant's products, claimant's beef steaks and veal steaks now come within the recently promulgated "fabricated steak" regulation and such products are subject to condemnation if they fail to meet the standards set forth in that regulation.

■ Claimant contends that such regulation is an "ex post facto regulation" and inapplicable to meat food products seized prior to the regulations effective date. Not surprisingly, claimant has cited no authority in support of this proposition.

While claimant's argument that the Secretary's "hamburger" regulation is inapplicable to the products in question might well have been technically correct, we cannot ignore the existence of the recently promulgated "fabricated steak" regulation as applicable to such meats wherever and whenever found, including meat which may already be the subject of a libel. Any question concerning the applicability of the Secretary's hamburger regulation has now become moot by the promulgation of a fabricated steak regulation. Accordingly, claimant's products may now be tested in this proceeding by the standards applicable to fabricated steaks; no supplemental pleadings by the government appear to be necessary because developments since

the filing of the libel involve, not matters of fact, but only matters of law.

Claimant, recognizing the possible applicability of the fabricated steak regulation but being unwilling to concede the propriety of libel through this action, contends that the recent regulation is void in that it was adopted by the Secretary without compliance with the requirements of the Administrative Procedure Act, 5 U.S.C. § 553.

The essence of this contention is that the notice of the proposed fabricated steak regulation, published in the Federal Register in August, 1969, 34 Fed.Reg. 13234, failed to indicate that the new regulation would cover veal steaks or that a 30% fat content limit would be imposed.

■ However, regardless of the claimed deficiencies in the published notice, claimant has failed to show any prejudice which might have resulted therefrom; there is no claim that, due to lack of notice, claimant was deprived of an opportunity to administratively oppose the new regulation. It is undisputed that as early as March 31, 1965, claimant was informed by the Department of Agriculture that, pursuant to long established Department policy, the maximum fat content for "fabricated steak," hamburger, chopped beef, ground veal and the like was 30%. (See copy of letter from W. J. Minor, Chief Staff Officer, U.S.D.A., to the Chip Steak Company, attached to the affidavit of W. J. Minor).

### THE MERITS

■ Finally, claimant challenges the Secretary's determination that the samples of claimant's products contain in excess of 30% fat; this challenge is based only on statements in claimant's briefs and pleadings that samples of the same products tested by claimant contained less than 30% fat and that claimant's quality control is consistently below 30% fat and that the government samples were not properly prepared.

Having in mind that this action is now before the court on cross-motions for summary judgment, we note that the only evidentiary material in the record concerning the fat content of the meat food products in question is contained in copies of the analytical reports prepared by the Department of Agriculture indicating that each of the products tested contained in excess of 30% fat. (See Ex. A, Ex. B, Ex. C, attached to the affidavit of L. L. Gast).

Claimant has failed to submit, as required by F.R.Civ.P. 56(e), by affidavit or otherwise, counter evidentiary material indicating that the meat food products seized contained less than 30% fat. Accordingly, we must rule on summary judgment in accordance with the affidavits and reports submitted in support of the government's motion.

### CONCLUSION

For the foregoing reasons, we find that there is no genuine issue of fact presented herein; that the meat food products in question do in fact contain in excess of 30% fat; that the current regulation dealing with "fabricated steaks" sets a definition and standard for such products limiting the fat content to 30%; that due to the excessive fat content, the products in question are adulterated and misbranded within the meaning of the provisions of 21 U.S.C. 601(m) (8), 21 U.S.C. 601(n) (1) and (n) (7); and that such products should, therefore, be condemned pursuant to the provisions of 21 U.S.C. 673.

Accordingly, it is the order of this court that the government's motion for summary judgment should be, and the same is, hereby granted; and it is the further order of this court that the claimant's motion for summary judgment should be, and the same is, hereby denied.

However, having in mind the question raised herein concerning the claimed inapplicability of the Secretary's "hamburger" regulation and possible hardship which might result if full retroactive applicability is given to the recent "fabricated steak" regulation, enforcement of

the order entered herein shall be stayed for a period of thirty days from the date of issuance to give claimant an opportunity to bring, if possible, the meats in question into compliance with the standards imposed by the "fabricated steak" regulation.