726 F.2d 1481
 UNITED STATES of America, Plaintiff-Appellee,
v.
2,116 BOXES OF BONED BEEF, WEIGHING APPROXIMATELY 154,121
POUNDS, and 541 Boxes of Offal Weighing
Approximately 17,732 Pounds, Defendants-Appellants,
Jarboe Lackey Feedlots, Inc., Claimant-Appellant.
 No. 82-1537.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 23, 1984.
Rehearing Denied Feb. 23, 1984.
 
 1
 Charles D. McAtee, Topeka, Kan. (Anne L. Baker, Topeka, Kan., with him on the brief), of Eidson, Lewis, Porter & Haynes and Wilbur G. Leonard, Topeka, Kan., with him on the brief, for claimant-appellant Jarboe-Lackey Feedlots, Inc.
 
 
 2
 Edward T. Hand, Atty., Dept. of Justice, Washington, D.C. (William F. Baxter, Abbott B. Lipsky, Jr., Deputy Asst. Atty. Gen., Robert B. Nicholson and Mark C. Del Bianco, Dept. of Justice, Washington, D.C., Robert M. Spiller, Jr., Associate Chief Counsel for Enforcement, Food & Drug Admin., Rockville, Md., Robert R. Donlan, Dept. of Justice, Anthony J. Buccitelli, Dept. of Agriculture, Washington, D.C., of counsel, with him on the brief), for plaintiff-appellee U.S.
 
 
 3
 Before HOLLOWAY and LOGAN, Circuit Judges, and ARRAJ, District Judge*.
 
 
 4
 ARRAJ, District Judge.
 
 
 5
 This is an appeal from a condemnation action brought by the United States pursuant to the Meat Inspection Act, 21 U.S.C. Secs. 601-695, alleging adulteration of certain beef and offal owned by Jarboe-Lackey Feedlots, Inc.. Following an extensive trial, the district court concluded that the government had failed to meet its burden of proving adulteration, 21 U.S.C. Sec. 601(m)(1), (m)(2)(A), and (m)(3), and dismissed the libel action. The trial court later denied Jarboe-Lackey's petition for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412 (Supp.1983), finding that the government's position was "substantially justified" and that the United States had acted in good faith.
 
 
 6
 Appellant raises numerous issues on appeal. Foremost among them is claimant's request for attorneys' fees under the EAJA. First, however, we must determine whether the district court had jurisdiction over the seizure action. The remaining portion of the discussion will address appellant's contentions that the trial court erred when it: 1) found that claimant had illegally implanted steers; and 2) denied claimant's motion for recoupment and counterclaim for recoupment. We reject appellant's arguments and affirm the trial court's rulings and findings.
 
 
 7
 * Based upon new scientific evidence that the use of diethylstilbestrol (DES) as a growth promotant in animals leaves potentially carcinogenic residues in edible portions of meat, the Food and Drug Administration (FDA) withdrew its approval of New Animal Drug Applications (NADA's) for use of DES in feed and implants in 1979. 44 Fed.Reg. 54852 (Corrected copy of Commissioner's order, September 21, 1979). See Rhone-Poulenc, Inc., Hess & Clark Div. v. FDA, 636 F.2d 750 (D.C.Cir.1980) (Affirming the Commissioner's order). As a result, the marketing of meat and byproducts from animals treated with DES on or after November 1, 1979, was prohibited.[1] 44 Fed.Reg. 42679, 45618, 45764 (Deadline prohibiting use of DES implants was postponed from July 20, 1979, until November 1, 1979).
 
 
 8
 On April 17, 1980, the United States Department of Agriculture (USDA) seized 273 beef carcasses and offal belonging to Jarboe-Lackey, after observing recently implanted DES pellets in the ears of appellant's cattle. Seven ears were randomly removed and subjected to laboratory testing; the results confirmed that the DES content of the pellets was high enough to leave residue in the meat.
 
 
 9
 On May 14, 1980, the United States filed a seizure action against the meat, charging that it was adulterated within the meaning of the Federal Meat Inspection Act, 21 U.S.C. Sec. 601(m).[2] A complicated trial to the court culminated in an opinion and order dated May 7, 1981. 516 F.Supp. 321 (D.Kan.1981). The district court found that Jarboe-Lackey had implanted animals with DES on or after November 1, 1979, Id. at 322-23, and that DES is harmful and deleterious within the meaning of Section 601(m). Id. at 325, 335. But the government failed to prove that the beef was adulterated as defined by Sections 601(m)(1), (m)(2)(A) and (m)(3). Specifically, the United States failed to establish that there was a reasonable possibility that the amount of DES in the beef would be harmful. 21 U.S.C. Sec. 601(m)(1). And as the district court caustically pointed out, "there were no regulations of the Department of Agriculture in force ... through which the Secretary (had) exercised his discretion and determined that DES was a harmful or deleterious substance within the meaning of [Section] 601(m)(2)(A)." 516 F.Supp. at 344. Lastly, the court found no violation of Section 601(m)(3). Id. at 350.
 
 
 10
 The district court dismissed the complaint and ordered the taxation of court costs against the government, but declined to consider Jarboe-Lackey's request for attorneys' fees. Consequently, when both parties appealed, we dismissed for lack of finality and remanded the case with instructions to decide the attorneys' fees issue. (Slip Opinion, November 3, 1981). Appellants then filed a counterclaim for damages under 21 U.S.C. Sec. 673, 28 U.S.C. Sec. 2465 and the Federal Tort Claims Act, and requested costs and attorneys' fees under the EAJA, 28 U.S.C. Sec. 2412(b), and Sec. 2412(d)(1)(A). After briefing and oral argument, the court ruled on these matters as well as appellant's pending motion for recoupment of the loss in value of the meat. It denied Jarboe-Lackey's petition for fees under the EAJA because the position of the United States was "substantially justified" and there was no evidence of bad faith. Additionally, claimant's counterclaim and motion for recoupment were dismissed as "untimely and irrelevant".
 
 II
 
 11
 Appellant maintains that the district court had no jurisdiction over the seizure action because the government's complaint was filed more than 20 days after the beef was initially detained. According to Jarboe-Lackey, the statute authorizing seizure of adulterated meat, 21 U.S.C. Sec. 673(a)[3] is limited by the statutory provision restricting the allowable detention period for adulterated beef. 21 U.S.C. Sec. 672[4]. Appellant reasons that to construe the former statute otherwise would violate the claimant's due process rights.
 
 
 12
 We do not find this interpretation persuasive. "[W]hile it is true that Sec. 672 limits the right of the government to physically detain beyond the maximum of twenty days, nowhere in the provisions of Sec. 673 is the twenty day period of Sec. 672 mentioned as a time limitation upon the filing of a libel action." United States v. 2623 Pounds, More or Less, of Veal & Beef, 336 F.Supp. 140, 144 (N.D.Cal.1971). Indeed, the express language of Sec. 673 provides that a judicial proceeding may be instituted "at any time" against an adulterated meat food product. Id. This leads us to conclude that the 20 day period of Sec. 672 is not a jurisdictional prerequisite to a libel action under Sec. 673. See, 2623 Pounds, supra at 145.
 
 
 13
 To be sure, the owner of seized meat is entitled to its return at the end of the 20 day period in the absence of government action.[5] 21 U.S.C. Sec. 672. The claimant can accomplish this through a proceeding in the nature of mandamus or replevin. 336 F.Supp. at 145. But the owner's right extends no further. Jarboe-Lackey may not challenge the district court's jurisdiction over the seizure action merely because the United States failed to comply with Sec. 672's 20 day detention period. Accordingly, we affirm the trial court's ruling denying claimant's motion to dismiss for lack of jurisdiction.
 
 III
 
 14
 Jarboe-Lackey seeks an award of attorneys' fees and expenses under the Equal Access to Justice Act. 28 U.S.C. Sec. 2412 (Supp.1983). The EAJA, enacted in 1980, is designed to "diminish the deterrent effect of seeking review or defending against governmental action." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 12 (1980), U.S.Code Cong. & Admin.News 1980, p. 4953. Impecunious parties are often reluctant to challenge unreasonable governmental action because of the cost involved in vindicating their rights. Congress also hoped to relieve victims of abusive governmental conduct and to expose more governmental action to adversarial testing by encouraging private parties to challenge U.S. behavior. Spencer v. NLRB, 712 F.2d 539, 550 (D.C.Cir.1983).
 
 
 15
 Claimant's petition is based upon two provisions of the EAJA. Section 2412(d)(1)(A) provides that a court shall award an eligible prevailing party attorneys' fees and other litigation expenses unless some other statute specifically provides otherwise or "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[6] This is an experimental portion of the Act which will be automatically repealed by its "sunset provision" if it is not reenacted before October 1, 1984.[7] Meanwhile, however, courts have struggled with its ambiguous phrases and muddled legislative history.
 
 
 16
 Jarboe-Lackey also claims entitlement to fees under Section 2412(b). It makes the United States liable for attorneys' fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."[8] This section codifies several important exceptions to the general "American Rule"[9] and thereby allows recovery of attorneys' fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons."[10] Fitzgerald v. Hampton, 545 F.Supp. 53, 56 (D.D.C.1982); see also Spencer, supra at 545.
 
 A. Scope of Review
 
 17
 A trial judge's ruling on an EAJA application is to be modified by an appellate court only when there is a showing of abuse of discretion. Matthews v. United States, 713 F.2d 677, 682 (11th Cir.1983); Hoang Ha v. Schweiker, 707 F.2d 1104, 1105 (9th Cir.1983); Foster v. Tourtellotte, 704 F.2d 1109, 1110 (9th Cir.1983); Knights of the KKK v. East Baton Rouge Parish School Board, 679 F.2d 64, 69 (5th Cir.1982). Under this standard of review, the district court's conclusions of law are reviewable on a de novo basis, Spencer, supra at 563-564, and its findings of fact are to be reversed only if "clearly erroneous". Fed.R.Civ.P. 52(a). And "to the extent that trial judges' rulings regarding strength of positions taken in litigation by the United States are based upon assessments of the probative value of the evidence offered by the government, they should be reversed only if 'clearly erroneous' ". Spencer, supra at 564. The Supreme Court has defined a finding as "clearly erroneous":
 
 
 18
 When although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm belief that a mistake has been committed. United States v. Gypsum Co., 333 U.S. 364, 394-395 [68 S.Ct. 525, 541-542, 92 L.Ed. 746] (1948); Milgo Electronic Corp. v. United Business Communications, Inc., 623 F.2d 645, 662 (10th Cir.), cert. denied, 449 U.S. 1066 [101 S.Ct. 794, 66 L.Ed.2d 611] (1980).
 
 B. Section 2412(d)(1)(A)
 
 19
 Jarboe-Lackey contends that the trial court erred when it denied claimant's request for attorneys' fees and costs under Sec. 2412(d)(1)(A) because the position of the United States was not "substantially justified." The law is clear that the test of substantial justification is essentially one of reasonableness in both law and fact.[11] H.R.Rep. No. 1418, 96th Cong. 2d Session, p. 10-11 (1980), U.S.Code Cong. & Admin.News 1980, p. 4989-90; Foley Construction Co. v. U.S. Army Corps of Engineers, 716 F.2d 1202, 1204 (8th Cir.1983); see also Flow Boy, Inc. and Tradewinds Industries, Inc. v. United States, Nos. 82-1823, 82-1828, 82-1965 and 82-1966, slip op. (10th Cir. January 20, 1984); Dougherty v. Lehman, 711 F.2d 555 (3rd Cir.1983); Foster, supra at 1112; Broad Avenue Laundry & Tailoring v. United States, 693 F.2d 1387, 1391 (Fed.Cir.1982); Wyandotte Savings Bank v. NLRB, 682 F.2d 119, 120 (6th Cir.1982). S & H Riggers & Erectors, Inc. v. OSHRC, 672 F.2d 426, 429-430 (5th Cir.1982). The government must therefore show that there is a reasonable basis in truth for the facts alleged in the pleadings; that there exists a reasonable basis in law for the theory it propounds; and that the facts alleged will reasonably support the legal theory advanced. Dougherty v. Lehman, supra at 564.
 
 
 20
 The [substantial justification] standard, however, should not be read to raise a presumption that the Government position was not substantially justified. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.
 
 
 21
 H.R.Rep. No. 1418, 96th Cong. 2d Sess. 10-11 (1980), U.S.Code Cong. & Admin.News 1980, p. 4989-90.
 
 
 22
 While there is little debate about the meaning of "substantial justification", there is considerable disagreement about which government position must be justified. See, e.g., Foley, supra at 1204; Spencer, supra at 546; Natural Resources Defense Council, Inc. v. USEPA, 703 F.2d 700, 707 (3rd Cir.1983); Kay Manufacturing Co. v. United States, 699 F.2d 1376, 1379 (Fed.Cir.1983); Gava v. United States, 699 F.2d 1367, 1370 (Fed.Cir.1983); S & H Riggers, supra at 430-431. Some courts have concluded that the government position referred to in Sec. 2412(d)(1)(A) is the litigation position. See, Spencer, supra at 557; Kay Mfg., supra; Gava, supra; Tyler Business Services, Inc. v. NLRB, 695 F.2d 73, 75 (4th Cir.1982); Broad Ave, supra at 1390; S & H Riggers, supra at 430-431; Operating Engineers Local U. No. 3 v. Bohn, 541 F.Supp. 486, 494 (D.Utah 1982). Other courts have held that it refers to the agency action which made it necessary for a party to file suit. Natural Resources Defense Council v. USEPA, supra at 707; EDF v. Watt, 554 F.Supp. 36, 40-41 (E.D.N.Y.1982). Yet in many cases "it makes no functional difference how one conceives of the government's 'position' because the litigation position of the United States will almost always be that its underlying action was legally justifiable." Foley, supra at 1204, quoting Spencer, supra at 551-552.
 
 
 23
 We agree with the well-reasoned conclusion of the District of Columbia Court of Appeals in Spencer, supra, that when the position of the United States does make a difference, "it seems more sensible and consistent with the purposes of the EAJA to interpret the phrase as the stance taken by the United States in litigation than to interpret it as the governmental behavior that precipitated the suit." Id. at 556. We therefore hold that the position of the United States, for purposes of this Act, means the arguments relied upon by the government in litigation.
 
 
 24
 Jarboe-Lackey maintains that the trial court's Memorandum and Decision of May 7, 1981, 516 F.Supp. 321 (D.Kans.1981), holding that the United States failed to meet its burden of establishing adulterated beef and offal, is inconsistent with the court's refusal to award claimant attorneys' fees under Section 2412(d)(1)(A). Appellant argues that not only did the district court rule in its favor on the merits of the case, but that it did so with such objurgatory remarks about the government's evidence that one is compelled to conclude that attorneys' fees are appropriate. Claimant cites as one example the court's characterization of the Secretary of Agriculture's Sec. 601(m)(2)(A) order--finding meat of DES implanted steers adulterated--as arbitrary, capricious and irrational because there was no actual notice given. This language, coupled with similar comments about proof of adulteration, leads Jarboe-Lackey to conclude that the government's position was not substantially justified. We disagree.
 
 
 25
 While Judge Kelly's May 7, 1981, opinion does include several critical comments about the government's shortcomings in establishing adulteration under 21 U.S.C. Sec. 601, it cannot be read alone. Rather, it must be viewed in the context of the district court's later ruling and specific findings regarding claimant's application for fees; for it was only in the latter proceeding that the government's litigation position was subjected to the test of reasonableness in fact and law.
 
 
 26
 On March 3, 1982, the district court heard oral argument on Jarboe-Lackey's petition for attorneys' fees under the EAJA. In its ruling at the close of the hearing, the court expressly held that the filing of the seizure action by the United States was substantially justified. Specifically, it found that as of April 1980 Jarboe-Lackey cattle had been illegally implanted with DES after its legal deadline; that the DES implants were prominent and palpable in the cattle's ears at the time of slaughter; that there was an ongoing DES ban; that the enforcement division of the agency had published scientific treatises suggesting that tissue residue persisted in implanted cattle; and finally, that DES was a known carcinogen in humans and animals. Based upon these findings, the court noted that it was not unreasonable for the government representative to conclude that unless the beef and offal were seized, implanted meat would be introduced into commerce; and indeed, "the Government had every right if not the duty, to proceed with the seizure action."
 
 
 27
 We find that district court did not err in holding that the government's position was substantially justified because there was a reasonable basis in both fact and in law. The fact that the government lost the case does not give rise to a presumption that its position was not substantially justified; nor does the loss coupled with the court's critical comments establish entitlement to fees. Because the U.S. has shown that its litigation position was substantially justified, Jarboe-Lackey is not entitled to fees under Sec. 2412(d)(1)(A).
 
 C. Section 2412(b)
 
 28
 Appellant also contends that the court erred in finding that Jarboe-Lackey was not entitled to fees under the codified "bad faith" exception to the American Rule. 28 U.S.C. Sec. 2412(b). In contrast to Section 2412(d)(1)(A), the law is unambiguous regarding what must be shown to justify an award of fees under this provision. This is because there is a well-developed body of caselaw which defines the contours of the now-"codified exceptions."
 
 
 29
 An award of attorneys' fees under the "bad faith" exception to the American rule "is punitive, and the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice.' " United States v. Standard Oil Co. of California, 603 F.2d 100, 103 (9th Cir.1979) (quoting 6 J. Moore, Federal Practice, Sec. 54.77 pp. 1709-1710 (2d ed.)); see Cornwall v. Robinson, 654 F.2d 685, 687 (10th Cir.1981). It requires more than a showing of a weak or legally inadequate case, Americana Industries, Inc. v. Wometco de Puerto Rico, Inc., 556 F.2d 625, 628 (1st Cir.1979); see Cornwall, supra at 687; Schmidt v. Natl. Organization for Women, 562 F.Supp. 210, 215 (N.D.Fla.1983); and "[t]he exception is not invoked by findings of negligence, frivolity, or improvidence." Cornwall, supra at 687. To be sure, this is an extremely narrow exception under which a trial court may award attorneys' fees.
 
 
 30
 Finally, it is important to note that the awarding of attorneys' fees under the "bad faith" exception is committed to the discretion of the district court and will be reversed only when there is a showing of abuse of discretion. Ryan v. Hatfield, 578 F.2d 275, 277 (10th Cir.1978).
 
 
 31
 Appellants have failed to persuade this court that the government acted in bad faith and that the trial court's ruling was an abuse of discretion. We therefore affirm the court's specific finding that there was "no evidence that the government acted in bad faith in either the filing or preparation of this case."D. Evidentiary Hearing
 
 
 32
 The final EAJA question before us involves Jarboe-Lackey's request for an evidentiary hearing or to proffer evidence on the issues of substantial justification and bad faith. Appellant urges this Court to issue an order directing the district court to hold an evidentiary hearing on these issues because the law purportedly requires a court to grant a request for an evidentiary hearing when disputed facts determine the right to a fee award.
 
 
 33
 Neither the statutory language of the EAJA nor the caselaw supports Jarboe-Lackey's request. First, we observe that Sec. 2412(d) does not require an evidentiary hearing before ruling on an EAJA application. There is also no mention or reference to a hearing requirement in the legislative history of Section 2412. Caselaw on the right to an evidentiary hearing to resolve disputed facts in EAJA claims is scarce. One court, however, has addressed the issue in the context of the codified "bad faith" exception, 2412(d)(1)(A). In McQuiston v. Marsh, 707 F.2d 1082 (9th Cir.1983), an unsuccessful bidder on an army contract brought an action to have the contract award set aside. The contractor's petition for attorneys' fees under the bad faith provision of the EAJA was denied and claimant appealed. The circuit court found that "[t]he parties raise a factual dispute as to the bad faith, if any, of the government both before and during the course of this litigation." Id. at 1086. Accordingly, the court remanded the proceedings to the district court to make findings on whether the government's conduct amounted to bad faith.
 
 
 34
 Courts have also remanded cases for evidentiary hearings and specific findings of bad faith in non-codified "bad faith" attorneys' fee cases. See, e.g., Robinson v. Ritchie, 646 F.2d 147, 149 (4th Cir.1981). This suggests that there is a little tolerance for district court rulings on requests for fees under the "bad faith" exception which fail to make specific findings of bad faith.
 
 
 35
 In the present case, however, Judge Kelly confronted the question of the government's bad faith and determined that "there was no evidence of bad faith exercised at the hands of the Department of Agriculture or their attorneys in the preparation or the filing of this case." An evidentiary hearing for specific findings of bad faith is therefore unnecessary in this case.
 
 
 36
 Finally, we hold that the district court's refusal to accept proffered evidence on the issues of substantial justification and bad faith is not reversible error. Although the court could have allowed Jarboe-Lackey to proffer evidence on these issues, appellant was not prejudiced. The trial court gave the parties ample opportunity to brief and to argue the EAJA issue, including an opportunity to submit pertinent affidavits, and rendered its decision based upon careful consideration of all arguments before the court. We therefore affirm its ruling denying claimant's motion for an evidentiary hearing.
 
 IV
 
 37
 The third issue raised on appeal is whether there is evidence in the record to support a finding of fact that Jarboe-Lackey steers were "illegally implanted" with DES after the effective date of the growth promotant ban. The crux of appellant's argument is that no inference can be drawn that all 273 head of cattle contained DES implants when only six[12] randomly selected ears were analyzed. Jarboe-Lackey therefore asks this Court to reverse the district court's finding that the DES implants were administered after the FDA ban.
 
 
 38
 "An appellate court must accept a trial court's findings of fact unless they are clearly erroneous." Moreno v. Stahmann Farms, Inc., 693 F.2d 106, 108 (10th Cir.1982); Castillo v. United States, 552 F.2d 1385, 1388 (10th Cir.1977); Ahern v. Veterans Administration, 537 F.2d 1098, 1100 (10th Cir.1976). After reviewing the entire evidence, we are not "left with the definite and firm belief that a mistake has been committed." United States v. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Rather, we find that the ruling of the trial court is supported by the evidence.
 
 
 39
 On April 17, 1980, Dr. Gerald Rousseau, a USDA supervisory medical officer, observed recently implanted DES pellets in the ears of 40-50 steers owned by Jarboe-Lackey Feedlots, Inc. Dr. Rousseau removed seven ears for laboratory examination. The tests confirmed that the ears all contained DES pellets that were implanted on or after November 1, 1979. Appellant claims that it implanted steers with Ral-Gro rather than with DES, on or after November 1, 1979. But it also concedes that there were "1500 to 1700 steers which apparently were not implanted with Ral-Gro." Finally, Jarboe-Lackey admits that it had no way of knowing whether any of the 273 steer were implanted with DES after the effective date of the ban.
 
 
 40
 There is no evidence in the record which directly contradicts the trial court's finding. Indeed, the observations of Dr. Rousseau and the affirmative DES test results support a conclusion that the 273 head had been illegally implanted. We hold that the district court's finding is supported by the record and that is not clearly erroneous.
 
 V
 
 41
 Finally, Jarboe-Lackey contends that the court erred in denying its motion for recoupment and counterclaim for recoupment. Claimant seeks compensation for the diminished value of the res during the period of detention. Since jurisdiction of the condemnation action includes the power to return the goods to the claimant upon denial of the decree, Jarboe-Lackey reasons that it impliedly includes authority to compensate for depreciated value.
 
 
 42
 We do not agree with appellant's reasoning. Recoupment is not an appropriate means to recover money damages from the United States in this seizure action. This is because recoupment is merely "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very [matter] giving rise to the plaintiff's claim." First National Bank of Louisville v. Master Auto Service Corp., 693 F.2d 308, 310 n. 1 (4th Cir.1982); see also 6 C. Wright & Miller, Fed.Practice & Procedure, Civil, Sec. 1401 (1971 & Supp.1983). Although the sovereign waives immunity as to claims of the defendant which are asserted in recoupment, it does not waive immunity as to claims of a different form or nature than that sought by it. Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1344 (10th Cir.1982). In United States v. Ameco Electronic Corp., 224 F.Supp. 783 (E.D.N.Y.1963), the court explained that where the government is not seeking a judgment for a sum of money--there it was asserting title to certain chattels--"[t]he very nature of the action makes it impossible to reduce or discharge the claim by recoupment or setoff. A denominator common to the two claims is absent." Id. at 786.
 
 
 43
 In the case at bar, the government was seeking only seizure and condemnation remedies. Recoupment, therefore, may not serve as the basis of a claim for money damages arising out of this seizure action.
 
 
 44
 Appellant's counterclaim for recoupment was also properly dismissed. "Because the government cannot be sued without its consent, ... [Jarboe-Lackey] must demonstrate that the government has waived its immunity to the kind of claim it asserts." United States v. Lockheed L-188 Aircraft, 656 F.2d 390, 393 (9th Cir.1979). The first count in the counterclaim purports to invoke the court's jurisdiction under the Federal Tort Claims Act, which provides in pertinent part
 
 
 45
 [t]he district courts, ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.28 U.S.C. Sec. 1346(b) (1976).
 
 
 46
 The United States, however, has not waived its immunity to liability with respect to claims arising from the "detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. Sec. 2680(c). See United States v. Lockheed, supra at 397; United States v. 1500 Cases, 249 F.2d 382, 384 (7th Cir.1957). This express reservation of sovereign immunity requires dismissal of appellant's first count.
 
 
 47
 Jarboe-Lackey also asserts that 21 U.S.C. Sec. 673 and 28 U.S.C. Sec. 2465 provide statutory bases for its counterclaim. We must reject this contention because neither provision waives the United States' sovereign immunity to the type of claim asserted by claimant. United States v. Lockheed, supra at 393.
 
 
 48
 Section 673 of the Meat Inspection Act, which authorizes condemnation actions by the government against adulterated meat and articles, does not grant claimant specific statutory authority to bring suit against the United States. Section 2465, on the other hand, allows recovery of costs from the government in seizure actions, but carefully reserves immunity when "it appears that there was reasonable cause for the seizure." Although the district court did not enter a certificate as provided in the statute, there is little doubt that there were reasonable grounds for the seizure of Jarboe-Lackey carcasses. See United States v. 1500 Cases, supra at 384.
 
 
 49
 Although appellant has not asserted a viable recoupment counterclaim here, it may not be entirely without recourse. It may still have a cause of action against the government under the Tucker Act. See 28 U.S.C. Sec. 1491 and 28 U.S.C. Sec. 1346(a)(2). Such a claim, however, should be brought in the United States Claims Court since it appears to be over $10,000. 28 U.S.C. Sec. 1491.
 
 
 50
 Affirmed.
 
 
 
 *
 Honorable Alfred A. Arraj, United States District Judge of the District of Colorado, sitting by designation
 
 
 [1]
 The "explant program", 45 Fed.Reg. 26947 (April 22, 1980), however, permitted the marketing of "illegally implanted" meat and byproducts under special and limited conditions
 
 
 [2]
 Section 601(m) provides in pertinent part that meat is adulterated
 (1) if it bears or contains any poisonous or deleterious substance which may render it injurious to health...
 (2) (A) if it bears or contains (by reason of administration of any substance to the live animal or otherwise) any added poisonous or deleterious substance ... which may, in the judgment of the Secretary, make such article unfit for human food; [or]
 (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance or is for any other reason unsound, unhealthful, unwholesome, or otherwise unfit for human food;
 
 
 [3]
 Section 673(a) provides that any adulterated meat:
 ... shall be liable to be proceeded against and seized and condemned, at any time, on a libel of information in the United States district court ... within the jurisdiction of which the article or animal is found. (Emphasis added).
 
 
 [4]
 Section 672 provides in relevant part:
 Whenever any carcass ... or meat food product of cattle ... is found by any authorized representative of the Secretary upon any premises where it is held for purposes of, or during or after distribution in, commerce ... and there is reason to believe that such article is adulterated ... and is capable of use as human food ... it may be detained by such representative for a period not to exceed 20 days, pending action under Section 673 of this title....
 
 
 [5]
 We note that in the present case, Jarboe-Lackey apparently failed to ask the USDA to return the detained meat
 
 
 [6]
 The full text of Sec. 2412(d)(1)(A) reads:
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the government was substantially justified or that special circumstances make an award unjust.
 
 
 [7]
 Pub.L. No. 96-481, Sec. 204(c), 94 Stat. 2321, 2329 (1980) (codified at 28 U.S.C. Sec. 2412 note (Supp. V. 1981))
 
 
 [8]
 The full text of Sec. 2412(b) reads:
 Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to [Sec. 2412(a) ], to the prevailing party in any civil action brought by or against the United States or any agency and any official of the U.S. acting in his/her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 
 
 [9]
 The American Rule bars prevailing litigants from receiving attorneys' fees from the losing party. Alyeska Pipeline Service Co v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)
 
 
 [10]
 Attorneys' fees may also be recovered under two additional exceptions:
 i. When a party has conferred a common benefit by recovering a fund or property; and
 ii. When a party has willfully disobeyed a court order. Fitzgerald, supra at 56.
 
 
 [11]
 In "borderline cases", courts look to several criteria to determine whether the government's position was substantially justified: the clarity of the governing law; the foreseeable length and complexity of the litigation; and the consistency of the government's position. Spencer, supra at 559-561. Here, however, a standard of reasonableness is adequate and appropriate
 
 
 [12]
 Although seven ears were removed, it appears that the pellet from one ear was lost on the way to the laboratory