**UNITED STATES of America,**
**Plaintiff,**

v.

**AMECO ELECTRONIC CORPORATION,**
**Doscher's Moving and Storage Company, Inc. and Premier Welding Company, Inc., Defendants.**

**No. 61-C-604.**

United States District Court
E. D. New York.
Dec. 31, 1963.

Joseph P. Hoey, U. S. Atty., Eastern District of New York, Donald N. Ruby, Asst. U. S. Atty., of counsel, for plaintiff.

Goldfeld, Charak & Goldman, New York City, George Charak, New York City, of counsel, for defendant Premier Welding Co., Inc.

BARTELS, District Judge.

This is an action of replevin by the United States of America (Government) against the defendant Premier Welding Company, Inc. (Premier), to recover certain chattels which plaintiff alleges were wrongfully detained by Premier, the other defendants being no longer involved. The pertinent facts are admitted.

On June 30, 1959, the Government and Ameco Electronic Corporation (Ameco) entered into a contract whereby Ameco agreed to furnish and deliver to the Government 525 Frequency Meters AN/URM–80 for the sum of $504,803.-98. The contract provided that certain progress payments were to be made by the Government in an amount equal to 100 per cent of the total costs incurred by Ameco and that when a progress payment was made under the contract, title to all parts, materials, inventories, etc. theretofore acquired or produced or thereafter acquired or produced by Ameco and allocated or properly chargeable to the contract should forthwith vest in the Government upon said acquisition, production or allocation. On October 28, 1959, the first progress payment was made by the Government to Ameco in the sum of $15,997.82. Numerous other progress payments were made by the Government to Ameco and the parts and materials described in Schedule C of the complaint as amended by Item K of the Pre-Trial Order were acquired by Ameco for use in the performance of said contract and were allocated or properly chargeable to said contract. These parts and materials were fabricated by Ameco and were then sent by Ameco to Premier sometime in 1960 to have certain spot welding work performed upon them, and Premier accordingly performed such spot welding work upon the chattels referred to in Schedule C of the complaint between July 8, 1960 and October 28, 1960.

On May 24, 1961, the Government notified Ameco that the contract was terminated and duly demanded of Ameco that it give the Government possession of all parts, materials, inventories, etc. allocated or properly chargeable to said contract. Accordingly, on June 6, 1961, the Government demanded that Premier surrender possession to it of all parts and materials set forth in Schedule C of the complaint. Premier having refused to surrender possession, the chattels were replevied and delivered to the Government.

In its answer Premier, among its denials, asserts six counterclaims for damages ranging from $651 to $4,986.93, based primarily upon the value of services performed upon the replevied chattels. Various theories are asserted in support of these counterclaims, chief among which are (1) deprivation of me-

chanic's lien upon the chattels, (2) unjust enrichment, (3) laches and estoppel, (4) confirmation of the contract between Premier and Ameco, and (5) the Government's promise to pay for services performed.

■ The Government claims title to the property and moves to dismiss the counterclaims (pursuant to Rule 12(b) (1) (2) and (6), Fed.Rules Civ.Proc., 28 U.S.C.A.) on the ground that this Court lacks jurisdiction to entertain the same. Premier contends that the waiver of sovereign immunity contained in the Tucker Act, 28 U.S.C.A. § 1346(a), extends to counterclaims as well as original suits. The Act provides, in effect, that the district court shall have original jurisdiction of civil actions against the United States not in excess of $10,000, founded upon any express or implied contract. Subdivision (c) of Section 1346 provides that the jurisdiction conferred "includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section". This section is limited to set-offs and counterclaims on the part of the Government. There is no reciprocal provision authorizing set-offs and counterclaims against the Government in actions in which the Government is the plaintiff. The courts in other circuits have held that this omission is immaterial and that Congress by the Tucker Act has waived the Government's sovereign immunity to the extent of an affirmative recovery up to $10,000, and that for this purpose there is no distinction between a counterclaim and an original suit. United States v. Springfield, 5 Cir., 1960, 276 F.2d 798; United States v. Silverton, 1 Cir., 1952, 200 F. 2d 824; United States v. Buffalo Coal Mining Co., D.C.Alaska, 1959, 170 F. Supp. 727; see National City Bank of New York v. Republic of China, 1955, 348 U.S. 356, 359, 75 S.Ct. 423, 99 L.Ed. 389. In this circuit, however, the rule is firmly established that under the Tucker Act no affirmative recovery may be had by means of a counterclaim against

the Government, and that the only relief against the Government by means of a counterclaim is in the nature of recoupment or set-off. United States v. Nipissing Mines Co., 2 Cir., 1913, 206 F. 431; United States v. Carey Terminal Corp., E.D.N.Y., 1962, 209 F.Supp. 385; United States v. Frank, S.D.N.Y., 1962, 207 F.Supp. 216; United States v. Anasae International Corp., S.D.N.Y., 1961, 197 F.Supp. 926; United States v. Double Bend Mfg. Co., S.D.N.Y., 1953, 114 F.Supp. 750, 751; United States v. Wissahickon Tool Works, Inc., S.D.N.Y., 1949, 84 F.Supp. 896, affirmed, 2 Cir., 1952, 200 F.2d 936; see also United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. Joseph Behr & Sons, Inc., N.D.Ill., 1953, 110 F. Supp. 286.

Defendant suggests that the time has come to depart from this rule, asserting that the result is not required by the wording of the Tucker Act as demonstrated by the reasons given in support of the decisions in the other circuits. Considering the modern trend and attitude away from the doctrine of sovereign immunity whenever permissible, and the anomalous situation created under Rule 13, Fed.Rules Civ.Proc., 28 U.S.C.A., whenever a compulsory counterclaim is involved, cf., United States v. Thompson, N.D.W.Va., 1957, 150 F.Supp. 674, this Court would be inclined to agree. See United States v. Buffalo Coal Mining Co., supra; National City Bank of New York v. Republic of China, supra. It appears wholly unrealistic to compel the defendant under such circumstances to institute a separate and distinct suit for the amount of the counterclaim. But it is not for this Court to decide when a departure should be made from a rule long established in this circuit by the appellate court.

■■ Unable to assert a claim for affirmative relief, Premier contends that at least it should be able to set up its claim by way of recoupment or set-off.

Recoupment and set-off, however, are restricted to a reduction in or discharge of the principal claim. To accomplish this result, the claim of both the plaintiff and the defendant must involve fungible obligations which can be set-off against each other. For example, if the Government were seeking a money judgment, it would be possible for Premier without statutory authority, to recoup[1] an amount equal to the principal claim, United States v. United States Fidelity & Guaranty Co., supra, or if authorized, to set-off the amount of its claim,[2] provided there was compliance with the statutory authorization set forth in 28 U.S. C.A. § 2406. Under such pleading no affirmative judgment could be rendered against the Government. The Government here is not seeking a judgment for a sum of money but is asserting title to certain chattels. The very nature of the action makes it impossible to reduce or discharge the claim by recoupment or set-off. A denominator common to the two claims is absent. Consequently, any claim for damages, including those based upon unjust enrichment or a promise to pay, may not be asserted against the Government by the adverse party in this replevin action. See In re Greenstreet, Inc., 7 Cir., 1954, 209 F.2d 660; cf., In re American Boiler Works, Inc., W.D. Pa., 1954, 123 F.Supp. 352, affirmed, 3 Cir., 1955, 220 F.2d 319; United States v. Cardinale Warehousing Corp., D.N.J., 1946, 65 F.Supp. 760.

■■ The Court finds that under the clear terms of the contract, title to the chattels described in Schedule C of the complaint vested in the Government after the first progress payment. See Shepard Engineering Co. v. United States, 8 Cir., 1961, 289 F.2d 681. As a matter of fact, at the trial Premier did not deny that title to the chattels was vested in the Government. No lien could be asserted against chattels owned by the Government without its consent, United States v. Ansonia Brass & Copper Co.,

1910, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107; see United States v. Munsey Trust Co., 1947, 332 U.S. 234, 241, 67 S.Ct. 1599, 91 L.Ed. 2022, and similarly, the defense of laches or estoppel is unavailable against the Government. United States v. Summerlin, 1940, 310 U.S. 414, 60 S. Ct. 1019, 84 L.Ed. 1283; Shepard Engineering Co. v. United States, supra.

Defendant's counterclaims will be dismissed and judgment will be entered entitling the Government to recover possession of the chattels described in Schedule C of the complaint as amended by Item K of the Pre-Trial Order, without prejudice, however, to any claim or action Premier may prosecute otherwise against the Government.

Settle order within ten (10) days on two (2) days' notice.

---

1. Assuming the counterclaims arise out of the same transaction, see 3 Moore's Federal Practice (2d Ed.) § 1302.

2. See Note, Governmental Immunity from Counterclaim, 50 Colum.L.Rev. 505, 512, n. 57 (1950).