COMMUNITY BROTHERHOOD OF LYNN, INC. and Aegis Corporation

v.

The LYNN REDEVELOPMENT AUTHORITY; Department of Housing and Urban Development of the United States of America; Moon Landrieu, in his capacity as Secretary of the Department of Housing and Urban Development of the United States of America; David L. Phillips, Frederick Latour, individually and in his capacity as past Chairman of the Governing Board of the Lynn Redevelopment Authority; Albert Waldron, individually and in his capacity as a Member of the Governing Board of the Lynn Redevelopment Authority; Thomas McIntyre, individually and in his capacity as a member and present Chairman of the Governing Board of the Lynn Redevelopment Authority; Irving Estrich, in his capacity as a Member of the Governing Board of the Lynn Redevelopment Authority; Edith Beaucamp, in her capacity as a Member of the Governing Board of the Lynn Redevelopment Authority.

No. 76–4207–Z.

United States District Court,
D. Massachusetts.

Aug. 7, 1981.

Joseph Book, Book & Banks, Richard J. Mercer, Boston, Mass., for plaintiff.

Charles H. Robson, Lynn, Mass., for Latour.

Philip L. Sisk, Lynn, Mass., for Waldron and McIntyre.

John N. Nestor, Lynn, Mass., for Lynn Redevelopment Authority.

Mary Boylan, Asst. U. S. Atty., Boston, Mass., Nancy M. Floreen, Alice Daniel, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Ellen Perry Dole, HUD, Boston, Mass., for HUD.

Michael J. Barry, Lynn, Mass., for defendant Intervenor City of Lynn Dept. of Community Development.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiffs, community development organizations with memberships composed primarily of black residents of Lynn, Massachusetts, brought this action under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 42 U.S.C. § 2000d, 42 U.S.C. §§ 3612, 3617 and under state law, against the Lynn Redevelopment Authority ("LRA"), various individual members of its governing board, the mayor and former mayor of the City of Lynn, ("the Lynn defendants") and against the Department of Housing and Urban Development of the United States ("HUD"). Plaintiffs claim that the Lynn defendants discriminated against them on the basis of race when they de-designated plaintiffs as site developers of an urban renewal parcel in Lynn. Plaintiffs also claim that HUD failed to take formal action against the LRA despite plaintiffs' complaints of discrimination, and that such failure violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. and the Civil Rights Act of 1871, 42 U.S.C. § 1986. The case is before me on HUD's motion to dismiss all claims remaining against it, or in the alternative, for summary judgment.[1]

Plaintiffs seek substantial money damages from HUD as well as injunctive relief enjoining HUD from granting any federal financial assistance to the LRA, from allowing the continued de-designation of plaintiff, Aegis Corporation ("Aegis"), from failing to take "affirmative action" to end the LRA's alleged discriminatory policies and practices, and affirmatively requiring HUD to provide financing to the plaintiffs at 1975 rates for their original redevelopment project. Because I find that the statutory scheme established by Congress in Title VI does not create a private right of action by a funding applicant or beneficiary against a federal funding agency to obtain damages or mandatory injunctive relief, plaintiff's claims under Title VI must be dismissed.

Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d provides:

> No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

This section requires recipients of federal funding to comply with federal non-discrimination policies as a condition for receiving federal financial assistance. It creates a right in persons for whose benefit the provision was enacted not to be discriminated against, from which the Supreme Court has inferred a private right of action directly against the funding recipient whose actions are allegedly discriminatory. *Regents of University of California v. Bakke*, 438 U.S.

---

1. In response to an earlier motion to dismiss, the Court, in a September 16, 1980 memorandum, did dismiss certain defendants and certain claims.

265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *Allen v. Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

In a separate provision, section 602, 42 U.S.C. § 2000d–1, federal grant making agencies are authorized and directed to effectuate compliance with section 601, and, if necessary, to terminate funding or discontinue financial assistance to any program or activity "as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement." 42 U.S.C. § 2000d–1. With respect to programs funded or assisted by HUD, regulations have been promulgated detailing the procedures to be followed in investigations of complaints, requiring extensive conciliation attempts both by the Regional office and the assistant Secretary, and requiring 30 days notice to the appropriate House or Senate legislative committee before funds may be terminated. 42 U.S.C. § 2000d–1, 24 C.F.R. § 1.1 *et seq.,* HUD Handbook 8000.2. Finally, section 603, 42 U.S.C. § 2000d–2, provides for judicial review of agency action taken pursuant to section 602.

The Supreme Court, in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) recently analyzed in detail the Congressional intent behind the enforcement schemes of Title VI and Title IX, and found that scheme to contemplate two enforcement pathways, each serving a separate purpose. First, Congress established an administrative mechanism for terminating federal financial support to institutions engaged in prohibited discrimination; termination was a "severe" remedy intended to avoid the use of federal resources to support discriminatory practices. Second, Congress wanted to provide individual citizens effective protection against those practices, including the ability to obtain individually tailored remedies, particularly where the violation was found to be an isolated instance rather than a reflection of a pervasive practice. *Cannon,* 441 U.S. at 704–706, 99 S.Ct. at 1961–1962.

With respect to the adminstrative enforcement provisions, "a beneficiary may trigger an agency investigation under section 602 and may, under appropriate circumstances, petition for review of an agency determination," *N.A.A.C.P. v. Medical Center, Inc.,* 599 F.2d 1247, 1254 n.27 (3d Cir. 1979). But an individual plaintiff can do no more than compel the federal agency to comply with its own procedures for investigation; he cannot compel injunctive relief or funding termination. This very limit, the Supreme Court found, required the implication of the second pathway, a private remedy directly against the fund recipient. *Cannon, supra,* 706–707 n.41, 99 S.Ct. at 1962–1963 n.41.

Since the *Cannon* decision in 1979, two Courts of Appeals have squarely rejected the notion that Title VI (or the similarly structured Hill-Burton Act, 42 U.S.C. §§ 291 *et seq.,*) provided individuals with a private cause of action against the Secretary for any alleged failure to meet the Act's enforcement obligations. In *N.A.A.C.P. v. Medical Center, Inc.,* 599 F.2d 1247 (3d Cir. 1979) the Third Circuit found that an action by a beneficiary against a recipient of federal funds "would allow the beneficiary to vindicate his section 601 rights without invoking the executive's power to terminate funds," because the trial court may, upon a finding of a section 601 violation, order the recipient to cease the discriminatory practice. The Court continued:

It follows that the beneficiary may not sue the administrative agency under section 601. If the beneficiary were allowed to do so, it would be able to circumvent the limitations of sections 602 and 603, and would be in a position to, in essence, compel funding termination—which is an impermissible result. This conclusion is in harmony with our analysis of the legislative scheme. It does no harm to beneficiaries' rights, as complete relief can be awarded without the agency being a party to the private suit, and complete discovery can be undertaken, since the agency has no more relevant information to impart than does the funding recipient, who is a party. *Id.* at 1254 n.27.

Recently, relying on both *Cannon* and *N.A. A.C.P.* and finding a private right of action against the Secretary to be "inconsistent" with the statutory schemes of enforcement in both Title VI and the Hill-Burton Act, the Seventh Circuit dismissed a claim brought by indigent former patients against the Secretary of HEW to force termination of funds to a hospital, *Davis v. Ball Memorial Hospital Assoc.*, 640 F.2d 30 (7th Cir. 1980).

■ In the instant case, plaintiffs seek both the termination of funding assistance to the LRA and various forms of injunctive relief designed to restore them to the financial and strategic position they felt they had in 1975 before they were de-designated. Such relief, while it may be obtained in large measure through plaintiffs suit against the Lynn defendants, is not available as against HUD under the statutory scheme discussed above. Within that scheme, and by means of a suit under the Administrative Procedure Act, if the agency's action were found to be irrational, unsupported by the record, or an abuse of discretion, the only relief available to plaintiff would be a remand to HUD for further administrative proceedings. Such an order would not include a finding as to whether discrimination had actually occurred, and would not dictate the final result of the administrative process, which would be carried on beyond the District Court's continuing control and supervision. *Adams v. Richardson*, 480 F.2d 1159, 1163 n.5 (D.C. Cir.1973). Plaintiffs have explicitly eschewed the notion of a remand or of further administrative proceedings by HUD. Because plaintiffs' complaint against HUD seeks to enforce rights and obtain remedies which, under the scheme of Title VI, plaintiffs can only enforce against the Lynn defendants, plaintiffs' claim against HUD under 42 U.S.C. § 2000d is dismissed.[2]

Plaintiffs have also brought a claim against HUD under section 1986 of the Civil Rights Act of 1871, 42 U.S.C. § 1986, alleging that HUD, having actual knowledge of the alleged § 1985 conspiracy by the Lynn defendants to discriminate against plaintiffs, and having the power to prevent or help to prevent the discrimination, nevertheless neglected and failed to take any action to prevent or remedy the violation. HUD moves to dismiss the claim; I find that the claim must be dismissed.

■ The statutory scheme embodied in sections 1985 and 1986, while obviating the "state action" requirement of sections 1981 and 1983, *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), so that private persons may be proper defendants, nevertheless does not contemplate actions against federal officials acting under color of federal law, *Stockheimer v. Underwood*, 428 F.Supp. 192, 194 (W.D.Wisc.1977). Instead, its intent was to provide a federal avenue of redress for violations of civil rights on the state and local level. In the instant case, plaintiffs have alleged a conspiracy on the "state action" level under § 1985. But their attempt to connect this alleged conspiracy with HUD and to hold HUD liable for damages and for injunctive relief under § 1986 must fail. HUD is an administrative arm of the Federal government, and as such is neither a private individual nor a state official. The action

2. Plaintiffs argument that HUD may be an appropriate Title VI defendant rests on two lines of cases, both inapposite. The first, represented by *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) and *South East Chicago Com'n v. Department of H. & U. Dev.*, 488 F.2d 1119 (7th Cir. 1973) were actions under the Administrative Procedure Act seeking judicial review of administrative action to enforce by way of remand compliance by the federal agency with its own rules; they were not cases seeking direct injunctive relief against the federal defendant. The second line of cases is represented by *Garrett v. City of Hamtramck*, 503 F.2d 1236 (6th Cir. 1974). The Seventh Circuit, in *Davis v. Ball Memorial Hosp.*, 640 F.2d 30 (7th Cir. 1980), left open the possibility that a Title VI action against a federal agency might be appropriate in a situation such as *Garrett*, in which the alleged federal wrongdoing fell "just one step short of engaging in a kind of complicity with the improper state action." *Davis, supra* at 46. Like the allegations at issue in *Davis*, those at issue here fall "far short of the kind of wholesale neglect that has ordinarily given rise to rights against federal agencies." *Davis, supra* at 46–47.

against HUD is in reality an action for relief against the United States government. The provisions of § 1986 "do not extend to the Federal Government itself, against whom the present equitable relief is sought." *Hill v. McMartin*, 432 F.Supp. 99, 101 (E.D.Mich.1977). Because § 1986 does not provide a cause of action against a federal agency such as HUD, plaintiffs cannot successfully invoke jurisdiction under 28 U.S.C. § 1343, the jurisdictional counterpart of 42 U.S.C. §§ 1983, 1985, 1986 and their claim must be dismissed. *Stockheimer, supra* at 194.[3]

■ Finally, plaintiffs attempt to ground their claim against HUD on the National Housing Act, 12 U.S.C. § 1701 *et seq.* which contains a statutory waiver of governmental immunity to suit. Plaintiffs complaint against HUD, however, does not allege any wrongdoing in connection with HUD's activities under the Housing Act; those activities were limited to the eventual provision of mortgage guarantees and rent subsidies for the redevelopment project. Instead, plaintiffs allege that HUD failed to properly respond to plaintiff's complaints about the alleged Title VI discrimination of the Lynn defendants. Plaintiffs' then attempt to bootstrap their Title VI claim against the LRA into a jurisdictionally acceptable claim against HUD by asserting that the National Housing Act was violated by being administered discriminatorily in contravention of "correlative" civil rights statutes. This argument, however creative, must fail. HUD's obligations under Title VI are not interconnected with its obligations under the National Housing Act; no violation of the Housing Act having been alleged, there is no jurisdiction under 12 U.S.C. § 1702 over plaintiffs claims against HUD.

For the foregoing reasons, HUD's motion with respect to plaintiffs claims against HUD under Title VI, 42 U.S.C. § 2000d, under the Civil Rights Act, 42 U.S.C.

§ 1986, and under the National Housing Act 12 U.S.C. § 1701 *et seq.* must be and is allowed.

---

**3.** This Court's earlier Memorandum of Decision, dated September 16, 1980, which found that a claim had been made out by plaintiffs against HUD under § 1986 addressed only the narrow questions of whether plaintiffs had alleged "actual knowledge" by the defendant suf- ficient to invoke the statute. There, the Court was not asked to and did not address the question I now address and decide, namely, that HUD is not a proper party defendant under § 1986.