**UNITED STATES of America, Plaintiff,**

**and**

Yonkers Branch-National Association For the Advancement of Colored People, et al., Plaintiffs-Intervenors,

v.

**YONKERS BOARD OF EDUCATION;** City of Yonkers; and Yonkers Community Development Agency, Defendants.

**CITY OF YONKERS and Yonkers Community Development Agency, Third-Party Plaintiffs,**

**v.**

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and Secretary of Housing and Urban Development, Third-Party Defendants.

**No. 80 CIV 6761 (LBS).**

United States District Court, S.D. New York.

Sept. 18, 1984.

U.S. Dept. of Justice, Civ. Rights Div., Joshua P. Bogin, Kenneth Barnes, Michael L. Barrett, Sarah Vanderwicken, Washington, D.C., for U.S.

Michael H. Sussman, Brooklyn, N.Y., for plaintiffs-intervenors N.A.A.C.P.

Vedder, Price, Kaufman, Kammholz & Day, Michael W. Sculnick, Gerald S. Hartman, Nicholas D'Ambrosio, New York City, for defendants City of Yonkers and Yonkers Community Development Agency.

Butzel, Long, Gust, Klein & Van Zile, John B. Weaver, John H. Dudley, Mark T. Nelson, Detroit, Mich., Hall, Dickler, Lawler, Kent & Howley, Paul Whitby, New York City, for defendant Yonkers Bd. of Educ.

U.S. Dept. of Justice, Civ. Div., Raymond M. Larizza, Calvin E. Davis, Kirk Victor, John W. Herold, Office of Litigation, U.S. Dept. of Housing & Urban Development, Washington, D.C., for third-party defendant Dept. of Housing & Urban Development.

## OPINION

SAND, District Judge.

This action was brought by the United States against the City of Yonkers, the Yonkers Community Development Agency (collectively "the City") and the Yonkers Board of Education, alleging violations of Title VI of the Civil Rights Act of 1964, Title VIII of the Civil Rights Act of 1968, and the Fourteenth Amendment, in the administration of Yonkers' school system and public housing programs. Soon thereafter,

the Yonkers Branch of the National Association for the Advancement of Colored People ("NAACP") intervened as a party-plaintiff.

In its amended answer, the City has asserted a counterclaim against the United States and a third-party complaint against the Department of Housing and Urban Development ("HUD"). · Subsequently, the NAACP also asserted a claim against HUD.

The claims of the NAACP against HUD were settled by a consent decree approved by this Court on March 19, 1984. Thus, the only remaining claims that involve HUD are those asserted by the City. The United States and HUD have moved to dismiss the City's counterclaim and third-party complaint. For the reasons stated, the motion is granted.

At the outset, we note certain unusual aspects of defendant's counterclaim and third-party complaint. Both of these causes of action arise from the same alleged breach by HUD of its statutory responsibilities. Moreover, the plaintiff, the United States, is both the counterclaim defendant and the real party in interest with respect to the third-party claim, since HUD is an agency of the federal government.[1] *See, e.g.*, 14 Wright & Miller, *Federal Practice and Procedure* § 3655, at 174–75 (1976). Thus, the claims asserted in the counterclaim and third-party complaint are clearly alternative theories of liability, since the defendant could not recover on both.

The City's counterclaim and third-party claims seek monetary relief to reimburse the City in whole or in part for the cost of providing any remedy the Court might order or, alternatively, the equitable equivalent thereof, such as an order requiring HUD "to include the City among the governmental units receiving HUD funding." Defendants' Memorandum of June 13, 1984 at 10.

The United States and HUD have asserted two grounds for dismissal of the City's claims: first, that they are barred by the doctrine of sovereign immunity; and second, that they fail to state a claim for which relief can be granted.

### A. *Sovereign Immunity*

■ The sovereign immunity defense in this case is grounded upon the ancient principle that the United States, as sovereign, is immune from suit, except to the extent that Congress otherwise consents. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Of course, sovereign immunity applies equally to claims, such as those asserted by the City against HUD, brought against federal agencies regarding their official functions. *See Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). *See generally* 14 Wright & Miller, *Federal Practice and Procedure* § 3655 at 172–75 (and cases cited therein) (1976). Thus, the City's claims are barred unless they fall within some applicable congres-

---

**1.** An interesting technical question can be raised as to whether this circumstance renders the impleader action technically improper. Rule 14(a) of the Federal Rules of Civil Procedure provides that a third-party complaint may be "served upon a person not a party to the action." Because of the relationship between HUD and the United States, the impleader action may be tantamount to an attempt to implead the plaintiff, a basis for dismissal of a third-party complaint. *See, e.g., Henz v. Superior Trucking Co., Inc.,* 96 F.R.D. 219 (M.D.Pa.1982).

We note, however, that there are occasions upon which a federal agency may be deemed an entity separate from the United States, for pur-

poses of determining whether a justiciable controversy exists. *See United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974); *United States v. I.C.C.,* 337 U.S. 426, 430–31, 69 S.Ct. 1410, ·1413–14, 93 L.Ed. 1451 (1949). If the interests represented by HUD and the United States as plaintiff in this action are sufficiently different as to raise a potentially justiciable controversy between them, we believe that the impleader action would be proper *a fortiori.* In any event, since resolution of this question is not necessary to our disposition of this motion, we merely note the issue without deciding it.

sional waiver of the sovereign immunity defense.

The City has advanced three theories upon which it asserts that sovereign immunity has been waived in this case. One theory relies on the recoupment exception to the doctrine of sovereign immunity, a second on the general waiver provision of the Administrative Procedure Act, and the third on the "sue and be sued" clauses of the National Housing Act and the Housing Act of 1948. The first two theories can readily be dismissed as inapplicable to the present case. The issues raised by the third theory are more complex. Ultimately, however, we conclude that this theory, too, fails to provide a basis for finding that sovereign immunity has been waived.

## 1. *Recoupment*

■ The City first argues that sovereign immunity is no bar in the present case because its counterclaim against the United States is in the nature of a recoupment. It is settled doctrine that when the government brings a suit, it waives sovereign immunity as to counterclaims arising out of the same transaction which seek only to defeat all or part of its original claim. *E.g., Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967); *United States v. Wallace & Wallace Fuel Oil Corp.,* 540 F.Supp. 419, 431–32 (S.D.N.Y.1982). *See also* 14 Wright & Miller, *Federal Practice and Procedure* § 3654, at 165 (1976). To fall within this rule, however, the counterclaim must not only involve the same transaction as that sued on by the government, but must also not seek "relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims[.]" *Frederick, supra,* 386 F.2d at 488. *See also United States v. Ameco Electronic Corp.,* 224 F.Supp. 783 (E.D.N.Y.1963) (de-

fendant could not assert a counterclaim seeking monetary relief on theory of recoupment where government brought action for replevin of chattels). The United States in this action seeks only equitable relief. The City, in contrast, seeks monetary relief, or the equitable equivalent thereof. Thus, the City cannot rely upon the recoupment exception to the sovereign immunity defense, since its claims involve "relief different in kind or nature to that sought by the government." *Frederick, supra,* 386 F.2d at 488.

## 2. *The Administrative Procedure Act*

■ The second theory advanced by the City is the general waiver of sovereign immunity contained in the Administrative Procedure Act, 5 U.S.C. § 702. However, that provision is, by its express terms, inapplicable when the relief sought is an award of monetary damages.[2] Moreover, the provision has also been held inapplicable when the relief sought is equitable relief that is the equivalent of monetary damages, such as, for example, an order to pay money. *See, e.g., Jaffee v. United States,* 592 F.2d 712, 719 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). *Cf. B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983) (jurisdictional limitations over monetary claims "could not be avoided by framing a complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials when result would be the equivalent of obtaining money damages").

The City acknowledges this limitation but maintains nevertheless that its claims seeking recovery of the cost of a remedy by requiring HUD "to include the City among the governmental units receiving HUD funding" would fall within the waiver. We believe that this reading of the

---

**2.** The statute provides:

An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief there-

in be denied on the ground that it is against the United States ... The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States ....

5 U.S.C. § 702 (emphasis added) (1982).

statute is plainly incorrect. In *Jaffee, supra,* the Third Circuit held that a purported equitable claim would be considered the equivalent of a claim for monetary damages if it could be satisfied by the payment of money. 592 F.2d at 715.[3] We cannot imagine a clearer case of an "equitable claim" that would meet this test than the City's prayer "to include the city among the governmental units receiving HUD funding." [4]

### 3. *The Housing Acts*

■ Finally, the City contends that sovereign immunity has been waived because its claims fall within the "sue and be sued" provisions of the National Housing Act, 12 U.S.C. § 1702, and the Housing Act of 1948, 42 U.S.C. § 1404a. Section One of the National Housing Act (12 U.S.C. § 1702) provides in pertinent part:

> The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX–A, IX–B, and X of this chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

Similarly, 42 U.S.C. § 1404a provides that the United States Housing Authority, a predecessor of HUD, "may sue and be sued only with respect to its functions under this chapter, and sections 1501 to 1505 of this title."

These statutes, of course, waive sovereign immunity for claims alleging direct violations by HUD of the substantive provisions of the Housing Acts themselves. *See, e.g., Abrams v. Hills,* 547 F.2d 1062, 1070 (9th Cir.1976) (failure to implement an "operating subsidy" program for federally financed housing as required by the National Housing Act). More difficult questions of interpretation arise as to claims against HUD alleging breaches of other legal duties that purportedly occurred during the course of, or in connection with, the administration of programs under the enumerated statutes. The City argues that, in such circumstances, civil rights claims may be asserted against HUD.

The definitive authority on the construction of § 1702 is *FHA v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940).[5] There the Supreme Court held that § 1702 constituted a waiver of sovereign immunity with respect to an action for garnishment of wages due a federal employee. The rationale for this result was that "when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *Id.* at 245, 60 S.Ct. at 490.[6]

In the forty years since *Burr,* actions brought under § 1702 typically have involved contractual or quasi-contractual

---

**3.** The *Jaffee* case involved claims against the government brought by soldiers exposed to nuclear testing. The court held that their claim for the provision of medical services was barred by sovereign immunity since it could be satisfied, in the alternative, by the payment of money to compensate future medical expenses. 592 F.2d at 715. However, a petition that the government "warn members of a class about medical risks" was not subject to dismissal on this ground. Although the court acknowledged that this relief might impose an expense upon the government, it held that it could not be satisfied by the payment of money.

**4.** Contrast this claim with the complaint in *Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976) where the plaintiffs sought to enjoin HUD from providing funds to housing projects that would allegedly have been admin-

istered in a discriminatory manner. 425 U.S. at 287 n. 2, 96 S.Ct. at 1541 n. 2. There is, of course, a significant distinction between a claim seeking to *require* the payment of money and a claim seeking to *enjoin* future funding to prevent future harm.

**5.** The analysis of the waiver provisions of § 1404a is substantially the same and does not require a separate discussion. *See Little Earth of United Tribes, Inc. v. HUD,* 584 F.Supp. 1292, 1300 (D.Minn.1983).

**6.** HUD's liability for monetary damages, however, was limited under the *Burr* analysis to "those funds which have been paid over to [HUD] in accordance with [the National Housing Act] and which are in its possession, severed from Treasury funds and Treasury control ...." *Burr, supra,* 309 U.S. at 250, 60 S.Ct. at 493.

claims relating to the construction of housing projects financed under the act. *See, e.g., Industrial Indemnity, Inc. v. Landrieu,* 615 F.2d 644 (5th Cir.1980); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block Housing Development Fund Co., Inc.,* 608 F.2d 28 (2d Cir.1979); *Bor-Son Bldg. Corp. v. Heller,* 572 F.2d 174 (8th Cir.1978).

Several attempts have recently been made to extend the reach of § 1702 to civil rights actions against HUD, but they have generally been rejected by the courts with little or no discussion. In *Community Brotherhood of Lynn, Inc. v. Lynn Redevelopment Authority,* 523 F.Supp. 779 (D.Mass.1981), for example, the court held that the plaintiffs could not avail themselves of the waiver provisions of 12 U.S.C. § 1702 in bringing a Title VI claim against HUD "by asserting that the National Housing Act was violated by being administered discriminatorily in contravention of 'correlative' civil rights statutes." *Id.* at 783. *See also Unimex, Inc. v. HUD,* 594 F.2d 1060 (5th Cir.1979) (complaint alleging that HUD violated civil rights laws in processing mortgage application did not fall within waiver provisions of National Housing Act); *Little Earth of United Tribes, Inc., v. HUD,* 584 F.Supp. 1292, 1298–1300 (D.Minn.1983) (complaint alleging that HUD violated the Constitution and civil rights laws in connection with a decision to foreclose on a housing project).[7]

We are aware of only one case in which a court has held that § 1702 constitutes a waiver of sovereign immunity for civil rights actions against HUD, and that court made no attempt to reconcile its holding with the commercial obligation rationale of *Burr. See Baker v. F. & F. Investment Co.,* 489 F.2d 829 (7th Cir.1973) (action against HUD for money damages under 42 U.S.C. §§ 1981 and 1982 and the Fifth and Thirteenth Amendments).[8]

Civil rights actions do not "arise[e] out of the commercial relationships which [HUD] enters into in pursuit of its statutory mission." *S.S. Silberblatt, supra,* at 36. The affirmative duties imposed upon HUD by the civil rights provisions at issue here are sovereign responsibilities such as could be imposed only upon an agency of the United States. Thus, to hold that § 1702 waives sovereign immunity for civil rights actions against HUD would require a significant departure from the understanding of § 1702 that was expressed in *Burr,* and that has persisted for more than forty years unchallenged, to our knowledge, by subsequent courts or Congress.

The City offers little by way of support for departing from *Burr.* The two cases it cites as supporting its position, *Merrill Tenant Council v. HUD,* 638 F.2d 1086 (7th Cir.1981) and *Burroughs v. Hills,* 564 F.Supp. 1007 (N.D.Ill.1983), fit squarely within the *Burr* analysis. The claims in those cases could have been asserted

---

**7.** As explanation for its decision, the *Lynn* court merely noted that no violations of the National Housing Act had been alleged. *See* 523 F.Supp. at 783. The *Unimex* court was similarly terse; it, too, noted that no express or implied violation of the Housing Act had been alleged, and, citing *Burr,* that the waiver provision of § 1702 was therefore inapplicable. *See* 594 F.2d at 1061. Only the *Little Earth* court addressed the issues raised at any length. In holding § 1702 to be inapplicable to civil rights actions, the court noted the dearth of support for a holding to the contrary and the incompatibility of such a holding both with *Burr's* commercial obligation rationale and with its rule of limited liability. *See* 584 F.Supp. at 1299–1300.

**8.** The *Baker* court also neglected to explain how the plaintiff's claims could, as required under

*Burr,* be satisfied from a specific fund committed to the Secretary's control pursuant to the National Housing Act. These puzzling omissions may be attributable to the apparent "shortcomings in the briefs" submitted to the *Baker* court. *See FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364, 371 (7th Cir.1979) (discussing a different aspect of the *Baker* decision). In any event, the Seventh Circuit has subsequently overruled two aspects of the *Baker* decision, *see FDIC v. Citizens Bank & Trust Co., supra,* at 370–71, and *Beard v. Robinson,* 563 F.2d 331, 336 (7th Cir.1977), and has not yet had occasion to rule again on the aspect that is relevant to this case. Given these various considerations, we do not regard *Baker* as carrying significant persuasive force.

against private businesses in like circumstances.[9]

Nor is it adequate simply to assert that "titles VI and VIII are integral parts of the housing statutes," Defendants' Memorandum of June 13, 1984, at 6, and that civil rights actions against HUD thus fall within the "sue and be sued" clauses. Titles VI and VIII are not literally part of the Housing Acts. Whether the waiver provisions of those Acts can be considered to cover actions based upon other statutes must depend upon whether Congress can reasonably be understood to have intended such a result. The City has offered no argument to suggest that it can.

It is true that the words of § 1702, standing alone, could be read as a waiver of sovereign immunity for *any* action against HUD that relates to the administration of the Housing Acts. The words do not, however, stand alone. They were enacted as part of a statute that "launched a governmental agency into the commercial world."

*Burr,* 309 U.S. at 245, 60 S.Ct. at 490. The duties of HUD upon which the City bases its present claim for damages are sovereign, not commercial, in nature, and they are duties imposed by statutes enacted long after the Housing Acts. Thus, we cannot conclude that the Congress which enacted § 1702 intended that section to waive sovereign immunity in actions against HUD based upon alleged violations of the civil rights statutes.[10]

Nor is there any indication that the Congresses which enacted the civil rights laws intended § 1702 to be read as waiving sovereign immunity for actions based upon those laws. Indeed, there is evidence to the contrary. Section 603 of the Civil Rights Act of 1964 provides that agency action taken pursuant to the civil rights laws is subject to review according to the provisions of the Administrative Procedure Act. *See* Civil Rights Act of 1964, Pub.L. No. 88–352, Title VI, § 603, July 2, 1964, 78 Stat. 253, codified as 28 U.S.C. § 2000d–2.[11]

---

9. The cases involved, respectively, a claim that HUD had violated state law in failing to pay interest on the security deposits of tenants in federally-owned housing projects, and alleged violations of local building ordinances by HUD in connection with the maintenance of HUD-owned property. Both courts adverted to the commercial nature of the obligations sought to be enforced. *Merrill,* 638 F.2d at 1090; *Burroughs,* 564 F.Supp. at 1018.

The City cites no cases that have held § 1702 to be applicable to civil rights actions against HUD. As noted above, we are aware of only one case to so hold, and for reasons already discussed, we find that decision to be unpersuasive.

It has been suggested by the litigants in another case that the results in *Lopez v. Arraras,* 606 F.2d 347 (1st Cir.1979) and *Abrams v. Hills,* 547 F.2d 1062 (9th Cir.1976) provide support for a holding that the "sue and be sued" clauses apply to civil rights actions. *See Little Earth, supra,* 584 F.Supp. at 1299–1300. We disagree. The *Lopez* case involved a suit by tenants in a federally-funded low-income housing project against various officials of the Commonwealth of Puerto Rico for failure to comply with the maximum rent guidelines of the National Housing Act. 42 U.S.C. § 1437a(1). The asserted bases of liability of the Puerto Rican officials were 42 U.S.C. §§ 1983, 1985(3), and the Fifth and Fourteenth amendments. The court held that § 1404a waived sovereign immunity so that HUD could be joined as a party to the action. 606 F.2d at

353. However, the potential basis for HUD's liability in *Lopez* arose not under the civil rights laws, but rather under the National Housing Act itself, which directly imposed upon HUD the duties it was charged with breaching. The claims against HUD were therefore directly covered by the sovereign immunity waiver of § 1404a. *Abrams* involved a claim that the Secretary of HUD had failed to implement a certain "operating subsidy" program for federally-financed housing as required by the National Housing Act. The case had nothing to do with HUD's liability under the civil rights laws or any other statute besides the National Housing Act itself.

10. The same is true of § 1404a. While the words may bear the interpretation urged by the City, the context in which the words were enacted belies it. *Cf. Sigona v. Slusser,* 124 F.Supp. 327, 329 (D.Conn.1954) (analysis of *Burr* with respect to the meaning of 5 U.S.C. § 1702 is applicable to 42 U.S.C. § 1404a as well).

11. *The section provides that:*

Any department or agency action taken pursuant to section 2000d–1 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assist-

This provision clearly suggests that Congress intended the review provisions of the APA, not the "sue and be sued" clauses of the Housing Acts, to serve as the means of ensuring agency compliance with the civil rights laws.

Significantly, we are not aware of any case in which a civil rights plaintiff seeking injunctive or declarative relief against HUD has relied on the waiver provision of § 1702.[12] It is only where, as here, the claimants seek monetary damages, and thus *cannot* rely on the APA, that § 1702 is urged as a waiver of sovereign immunity for civil rights actions against HUD.[13]

The degree of strictness with which a waiver of sovereign immunity is to be construed is, at present, a matter of some confusion among the courts.[14] The basic principle remains clear, however, that the

consent of Congress is required before a particular action can be maintained against the United States. For the reasons stated, we do not believe that the "sue and be sued" clauses of the Housing Acts can be interpreted as congressional consent to actions for damages against HUD based upon alleged violations of the civil rights laws. Accordingly, we hold that the City's claims are barred by the doctrine of sovereign immunity.

## B. *Failure to State a Claim*

■ The City's claims must also be dismissed for failure to state a claim for which relief can be granted. There is no legal basis for claims for contribution or indemnity for a defendant charged with violation of the provisions at issue in this case.[15]

---

ance upon a finding of failure to comply with any requirement imposed pursuant to section 2000d–1 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of Title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that chapter.
42 U.S.C. § 2000d–2. Both title VI of the Civil Rights Act of 1964 and title VIII of the Civil Rights Act of 1968 are covered by this provision. *See Jones v. Tully,* 378 F.Supp. 286, 291–93 (S.D. N.Y.1974), *aff'd w/o op.,* 510 F.2d 961 (2d Cir. 1975).

**12.** *See, e.g., Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976); *Clients' Council v. Pierce,* 711 F.2d 1406 (8th Cir.1983); *Garrett v. City of Hamtramck,* 503 F.2d 1236 (6th Cir.1974); *Shannon v. HUD,* 436 F.2d 809 (3d Cir.1970); *NAACP v. Harris,* 567 F.Supp. 637 (D.Mass.1983); *Williamsburg Fair Housing Comm. v. NYCHA,* 73 F.R.D. 381 (S.D.N.Y.1976).

**13.** HUD's limited liability under § 1702 further increases the improbability that the section was intended to apply to civil rights actions. Limiting HUD's liability to funds within the control of the Secretary makes sense when applied to HUD's commercial activities. It is in keeping with the intent identified in *Burr* to subject HUD (but not the United States generally) to liability to the same extent that a private enterprise would be liable under like circumstances.
The limitation makes no sense as applied to civil rights actions. Since the duties in question are, as already noted, sovereign in nature, it seems unlikely that Congress would choose to

waive immunity on behalf of the Secretary of HUD but not the United States generally. Similarly, it is difficult to imagine why Congress would waive sovereign immunity for damage actions based upon the civil rights laws but have recovery depend upon whether the Secretary of HUD had funds within its control sufficient to cover the claim.

**14.** *Compare, e.g., Little Earth, supra,* at 584 F.Supp. 1299 (waivers of sovereign immunity should be strictly construed) *with S.S. Silberblatt, supra,* at 608 F.2d 35–36 (waivers of sovereign immunity should be liberally construed). *See also Modular Technics Corp. v. South Haven Houses,* 403 F.Supp. 204, 205 (E.D.N.Y.1975) (noting the confusion and suggesting that the authority for liberal construction relates only to "procedural" matters), *aff'd w/o op.,* 538 F.2d 311 (2d Cir.1976).

**15.** In this section, we need consider defendants' claims only insofar as they seek monetary damages under the doctrines of contribution or indemnity. For the reasons already stated in the discussion of sovereign immunity, the defendants' claims against the United States cannot properly be characterized as claims for recoupment.
In discussing contribution and indemnity together, we do not mean to blur the distinction between these concepts. *See* Prosser, *The Law of Torts* §§ 50, 51 (1971). However, the issue before us is only our power to recognize the City's claims, and in this respect, we do not believe that the distinctions between contribution and indemnity are relevant. *See Anderson v. Local No. 3,* 582 F.Supp. 627, 633 (S.D.N.Y. 1984).

The controlling authority in this area is *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), in which the Supreme Court held unanimously that there was no implied statutory or common law right of contribution available to a defendant charged with violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act. In doing so, the Court provided a general methodology by which contribution claims could be assessed under other federal statutes, such as those involved in this case. Recently, for example, this Court has had occasion to apply the *Northwest Airlines* decision to a claim for contribution and indemnity arising under § 1981 of the Civil Rights Act of 1871. *Anderson v. Local No. 3*, 582 F.Supp. 627 (S.D.N.Y. 1984).

The primary teaching of the *Northwest Airlines* case is that without some indication of congressional intent to create such actions and contribution claims, courts simply do not have the power to entertain them where to do so would potentially disrupt "a comprehensive legislative scheme including an integrated system of procedures for enforcement." 451 U.S. at 97, 101 S.Ct. at 1584.

The City has attempted to distinguish *Northwest Airlines* in several ways, many of which address factors that the Court specifically held to be irrelevant to its determination. For example, the participation of HUD officials in public housing activities for which the City is charged with discrimination might be the type of factor that would, under traditional analysis, support a common law right to contribution. However, the Supreme Court in *Northwest Airlines* assumed for purposes of its decision

> that all of the elements of a typical contribution claim are established. This means that we assume that the plaintiffs ... could have recovered from [the original defendant or the contribution defendant] ... and that it is unfair to require [the original defendant] to pay the entire judgment.

451 U.S. at 88–89, 101 S.Ct. at 1579–1580. The Court also assumed that the contribution defendant bore "significant responsibility for discriminatory practices that these statutes were designed to prohibit." *Id.* at 90, 101 S.Ct. at 1580. Thus, the City's protestations that the alleged conduct of HUD would support a common law claim for contribution or "implied indemnity" are unavailing.

■ The City also urges as a basis for its claims that it has standing to sue under the liberal "injury-in-fact" standing requirements of Title VIII. This argument misses the mark completely because possession of the requisite interest in a controversy to have standing (even assuming it were present here) does not *a fortiori* prove that one has a cognizable claim to assert. *Cf. Northwest Airlines, supra*, 451 U.S. at 90, 101 S.Ct. at 1580 (Court assumed for purposes of its decision that, under some circumstances, an employer— such as the contribution plaintiff—could be a "person aggrieved" under Title VII).

The City has also cited *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–42, 101 S.Ct. 2061, 2066–68, 68 L.Ed.2d 500 (1981), which, although holding that there is no right of contribution under the antitrust laws, contains some language which superficially might seem to support the City's position. The *Texas Industries* Court noted that the proposed contribution action did "not implicate 'uniquely federal interests' of the kind that oblige courts to formulate federal common law." 451 U.S. at 642, 101 S.Ct. at 2068. Here, the City argues, "by contrast, the case concerns housing, urban renewal and civil rights statutes intended to implement important national policies for the benefit of the public at large," and is therefore distinguishable from a contribution action among private parties.

The argument misconstrues the relevant portions of the *Texas Industries* case. By "uniquely federal interests," the Court did not mean, as the City seems to suggest, issues of public importance, but rather "such narrow areas as those concerned

with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Id.* at 641, 101 S.Ct. at 2067 (footnotes omitted).[16] Moreover, the City's argument ignores the teachings of *Northwest Airlines* that "federal common law is 'subject to the paramount authority of Congress'" 451 U.S. at 95, 101 S.Ct. at 1582, *quoting New Jersey v. New York*, 283 U.S. 336, 348, 51 S.Ct. 478, 481, 75 L.Ed. 1104 (1931), and that where "Congress has enacted a comprehensive legislative scheme ... [t]he judiciary may not ... fashion new remedies that might upset carefully considered legislative programs." 451 U.S. at 97, 101 S.Ct. at 1584 (footnote omitted).

Nor do we find any merit in the City's contention that *Texas Industries* is distinguishable from this case because of the judiciary's broader power under the statutory and constitutional provisions at issue here to formulate equitable remedies. First, for the reasons previously noted, the City's claims are monetary rather than equitable in nature. Second, the power to fashion an equitable remedy does not necessarily include the power to recognize actions for contribution, *see Northwest Airlines, supra*, 451 U.S. at 93 n. 28, 101 S.Ct. at 1581 n. 28 (Court noted that its holding did not address "[a] court's broad power under [Title VII] to fashion relief against all respondents named in a properly filed charge").

The only argument advanced by the City in support of a right of contribution that begins to address the criteria of *Northwest Airlines* is that HUD, unlike private defendants, has an affirmative duty under Title VIII to promote the policies of that provision rather than a merely passive duty to avoid discrimination. Thus, the City urges, "[p]articipation by HUD in the reme-

dy for any violation in which HUD participated would be consistent with Congress' recognition of the need for effective remedies to compensate the victims of discrimination and of the need to deter HUD from unlawful conduct." Defendants' Memorandum of June 13, 1984 at 17.

This contention raises two distinct lines of argument. First, the City seems to suggest that recognition of a right of contribution would be consistent with the overall policy of Title VIII. This argument fails because it too falls within the list of contentions that the Court in *Northwest Airlines* assumed to be true for purposes of its decision, but found unavailing. 451 U.S. at 89, 101 S.Ct. at 1579. *See also Texas Industries, supra*, 451 U.S. at 646–47, 101 S.Ct. at 2069–70.

On the other hand, the City also may be suggesting that the imposition of special statutory responsibilities upon HUD evidences congressional intent to allow contribution actions against HUD by a defendant accused of violating the lesser duty that Title VIII imposes upon parties other than HUD. While the argument, so construed, at least points in the right direction, it fails to raise a sufficiently strong inference of congressional intent specifically to allow contribution actions against HUD. The imposition of statutory responsibilities upon HUD does not indicate, without more, how or by whom those responsibilities can be enforced.

 The City also contends that, apart from statutory and common law theories, it has a constitutional right to contribution. It contends that where HUD has participated in discriminatory housing practices, it may be held liable for violating the Fifth Amendment. *Hills v. Gautreaux*, 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976). However, the fact that HUD may have violated the Constitution does not give rise

---

**16.** In referring to cases involving "the rights and obligations of the United States," the Court gave as examples *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973) (action by United States to quiet title in land) and *Clearfield Trust Co. v.*

*United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (action by United States involving commercial paper that it issued). 451 U.S. at 641 n. 12, 101 S.Ct. at 2067 n. 12. Obviously, these cases have nothing to do with the questions before this Court.

to a monetary claim for contribution by a party similarly accused. The City's allegations, if true, would only be a basis for finding HUD liable to the plaintiffs.[17]

■ We therefore hold that the City cannot maintain the claims it has asserted against HUD. It follows therefore that HUD must be dismissed as a party to this case, since no claims remain asserted against it.[18] Nothing in this Opinion, however, should be interpreted as intimating any view as to whether the facts alleged by the City in support of its claims would be relevant in shaping the relief, if any, that might be awarded against the City. A court has broad discretion to shape equitable relief in accordance with factors that might not be sufficient to give rise to a claim of legal entitlement. Moreover, although HUD will no longer be a party to this action in *eo nomine*, the United States will still be before the Court. Relief that binds the United States also binds its subordinate officers and agencies such as HUD. *See Sunshine Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60 S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940); *Mervin v. FTC*, 591 F.2d 821, 830 (D.C.Cir.1978); *River Valley, Inc. v. Dubuque County*, 507 F.2d 582, 585–86 (8th Cir.1974). Thus, if HUD's participation is required in any future action that may be ordered by the Court, we would not be without means to obtain such participation.

Accordingly, for the reasons stated, the motion of HUD and the United States to dismiss the third-party complaint and counterclaim asserted against them is granted.

SO ORDERED.

---

**17.** To the extent that the City's damage claims are predicated upon a constitutional tort theory, *see Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), they are also barred by sovereign immunity. *Bivens* authorizes suits against federal officials in their personal capacities, not against the government or its agencies. *E.g., Bartel v. F.A.A.*, 725 F.2d 1403, 1414 n. 20 (D.C.Cir.1984); *Keene Corp. v. United States*, 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Ross v. United States*, 574 F.Supp. 536, 540 (S.D.N.Y.1983).

**18.** The City has cited the case of *Hart v. Community School Bd. of Brooklyn*, 383 F.Supp. 699, 749–54 (E.D.N.Y.1974), *aff'd*, 512 F.2d 37 (2d

Cir.1975) in which Judge Weinstein directed that HUD remain a party to a school desegregation case, although finding that a third-party claim against it had been "mooted." While we can appreciate the concerns that motivated Judge Weinstein, we are also aware that, on appeal, the Second Circuit indicated its disapproval of the practice, and suggested very strongly that it would have reversed on this question had HUD and other third-party defendants appealed, writing:

> Rather than reverse the retention of jurisdiction over the third-party defendants in the absence of a cross-appeal seeking such relief, however, we recommend to the District Court that it withdraw its decision to "moot" the third-party action and dismiss it.

512 F.2d at 56.